POLY TRUCKING, INC., Defendant–Appellant,

v.

CONCENTRA HEALTH SERVICES, INC., Defendant–Appellee.

No. 02CA2429.

Colorado Court of Appeals, Div. I.

Jan. 15, 2004.

Rehearing Denied March 18, 2004.

Certiorari Denied July 19, 2004.*

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2003.

* Justice BENDER would grant as to the following issues:

Whether a party had a duty to disclose its concealed intent to bring suit against the employees of another party to a settlement agreement, when:(1) one party to the contract "purposefully and intentionally" chooses to not disclose its secret hope, knowing that the nondisclosure will create a false impression in the other party's mind;(2)the parties to that contract agree to release all claims against each other and to execute "mutual" releases;(3) the non-disclosing party takes steps to ensure that the release that it receives includes a release of its employees; and (4) through a drafting error, the misled party omits language from the contract releasing its own employees from liability?

Whether the court of appeals usurped the factfinder's role when it disregarded the trial court's finding of inequitable conduct and characterized the non-disclosing party's conduct as "mere silence"?

562

Faegre & Benson, LLP, Robert L. Matthews, Boulder, Colorado; Bartlit, Beck, Herman, Palenchar & Scott, Joseph C. Smith, Jr., Alison G. Wheeler, Denver, Colorado, for Defendant–Appellant.

Gibson, Dunn & Crutcher, LLP, Gregory J. Kerwin, Amanda J. Tessar, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge LOEB.

Poly Trucking, Inc. appeals from the trial court's order reforming a settlement agreement entered into by Poly and Concentra Health Services, Inc. We reverse.

This case arose out of a motor vehicle accident that occurred when a commercial truck driver, hired by Poly, had a seizure and lost consciousness. The truck entered oncoming traffic and struck a vehicle, which in turn flipped over the median and struck another vehicle. The driver of the third vehicle died in the collision.

The decedent's widow filed a wrongful death action in Colorado against Poly, the truck driver, and the driver of the second

vehicle. Poly and the other defendants brought third-party claims against Concentra, based on Concentra's allegedly improper issuance of a Department of Transportation medical certification to the truck driver. The widow then amended her complaint to include Concentra as a defendant. The Concentra doctors who conducted the medical examinations were not individually named as defendants by any party, although Poly's claims against Concentra were based on respondeat superior liability. Poly was advised by its Colorado counsel that the doctors were not subject to personal jurisdiction in Colorado.

The parties engaged in settlement discussions and mediation and eventually entered into a settlement agreement that resolved all claims in the lawsuit, except for the widow's claims against the second driver and his cross-claims against Concentra, Poly, and its driver. The portion of the settlement at issue here is a separate written Settlement Agreement and Mutual Release among Poly, its driver, and Concentra.

During the settlement negotiations, Concentra prepared each draft of the agreement. The initial draft was a unilateral release of Concentra and "[its] officers, parent and subsidiary corporations, agents, servants, employees and all other individuals and organizations connected therewith and the insurers, heirs, executors, administrators, successors and assigns of any of them." Poly objected to the initial draft because it was not a mutual release.

Concentra then prepared a second draft with a mutual release, but without the broad language from the initial draft releasing Concentra's agents, servants, and employees. Poly responded by altering the language releasing its own related entities and employees, but Concentra again failed to add language releasing Concentra's related entities and employees. It is undisputed that during negotiations, the parties did not discuss whether Concentra's doctors were to be included in the release.

The final settlement agreement was reviewed and signed by both parties, and a stipulation for dismissal was filed with the court. Poly then sued the Concentra doctors in Texas, which unlike Colorado, had personal jurisdiction over them. In the Colorado action, Concentra moved to reform the agreement to include a release of its doctors. The court dismissed the Colorado action with prejudice and granted Concentra's motion, reforming the settlement agreement to include the broad release language from the initial draft. Poly then filed this appeal.

■ Poly contends that the trial court erred in reforming the settlement agreement because there was no mutual mistake as to its terms and because, although there was a unilateral mistake by Concentra, Poly did not engage in fraud or inequitable conduct. We agree.

■ Reformation is an appropriate remedy when the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties. *Boyles Bros. Drilling Co. v. Orion Indus., Ltd.,* 761 P.2d 278, 281 (Colo.App. 1988). Reformation is generally permitted when either the parties made a mutual mistake or one party made a unilateral mistake and the other engaged in fraud or inequitable conduct. *Boyles Bros. Drilling Co. v. Orion Indus., Ltd., supra.* However, where a party's unilateral mistake is the result not of fraud, but of its own failure to use due diligence in reading the contract before signing it, that party will be held to the terms of the contract. *See Tayyara v. Stetson,* 521 P.2d 185, 189 (Colo.App.1974)(not published pursuant to C.A.R. 35(f))(specific performance proper where unilateral error was result of party's failure to use due diligence in reading the contract before signing it; trial court correctly refused to reform contract on this basis).

■ To find fraudulent concealment, the court must find that (1) the party concealed a material existing fact that in equity and good conscience should be disclosed; (2) the party knew it was concealing such a fact; (3) the other party was ignorant of the existence of the fact concealed; (4) the concealment was practiced with the intent that it be acted on; and (5) the concealment resulted in damage to the other party. *See Ingels v. Ingels,* 29 Colo.App. 585, 590, 487 P.2d 812, 815 (1971).

■ To succeed on a claim for fraudulent concealment or nondisclosure, a plaintiff must show that the defendant had a duty to disclose material information. A defendant has a duty to disclose to a plaintiff with whom it deals material facts that in equity or good conscience should be disclosed. *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.,* 965 P.2d 105, 111 (Colo.1998).

The contested issue here is whether Poly failed to disclose a material existing fact that in equity or good conscience should have been disclosed. In determining whether the circumstances of a particular case give rise to a duty to disclose in equity or good conscience, Restatement (Second) of Torts § 551(2) (1977) gives some guidance. *See Mallon Oil Co. v. Bowen/Edwards Assocs., Inc., supra.*

Restatement (Second) of Torts § 551(2) provides:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>
> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
>
> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
>
> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

■ Whether a defendant had a duty to disclose a particular fact is a question of law, and we are not bound by the trial court's determination concerning such a duty. *See Berger v. Sec. Pac. Info. Sys., Inc.,* 795 P.2d 1380, 1383 (Colo.App.1990).

Initially, we agree with the trial court that there was no mutual mistake here because there was no evidence that Poly intended to release the doctors. However, we conclude that the trial court erred in finding a unilateral mistake by Concentra and fraud by Poly.

The trial court found that Poly did not intend to release the doctors, that Poly "did not disclose that intent," and that Poly's intent was a material fact which was purposefully and intentionally not disclosed to "create a false impression in the mind of Concentra that it was resolving all matters relating to the death of [the victim] entirely." The court further found that Concentra relied "on its assumption that the nondisclosed fact did not exist ... that this was a release which would have settled everything relating to the ... incident including those matters involving its employees." The court found that "[Concentra's] reliance was justified and ... caused [it] damages." The court also found that Poly "had an obligation which in equity and good conscience would have required that [it] disclose [its] intent to reserve the right to sue."

We agree that the record supports a finding of a unilateral mistake by Concentra, in that Concentra intended to obtain a release of all of its employees, including the doctors, but mistakenly omitted language from the settlement agreement that would have accomplished this goal and never focused on that mistake until after the agreement had been executed. However, we conclude that the record does not support a finding that Poly failed to disclose a material existing fact that it had a duty, in equity and good conscience, to disclose.

Concentra argues that Poly's intent to reserve the right to sue the doctors in Texas was a material fact subject to disclosure, whereas Poly argues that its intent in this regard constitutes privileged litigation strate-

gy that it had no duty to disclose. *Cf. Trimble v. City & County of Denver*, 697 P.2d 716, 724–25 (Colo.1985)(intention not to abide by settlement agreement constituted a misrepresentation of fact constituting fraud). Arguably, the undisclosed fact was the failure of the contract language adequately to protect Concentra's interests. However, whether the material fact at issue is characterized as litigation strategy, an intent to reserve the right to sue, or a contract omission, under the circumstances here, we conclude that Poly did not have a duty to disclose it.

None of the factual scenarios outlined in Restatement § 551(2) are present in the record here. Poly did not make any affirmative representations regarding its intent to sue the doctors. Poly made no statements that were false, or that became false, and there was no new information that would make a previous statement false. *See* Restatement (Second) of Torts § 551(2)(b)-(d) (requiring some affirmative representation creating an obligation to disclose further facts).

Moreover, contrary to Concentra's argument, the written agreement was not ambiguous as to the parties' intent to release the doctors, and Poly's act of signing the agreement did not constitute an "ambiguous statement" under Restatement § 551(2)(b). The agreement specified that it was between Concentra and Poly and that it resolved matters relating to the lawsuit "as to them." The employee doctors were not parties to the lawsuit and were not specified in the agreement as parties or as part of "Concentra." Indeed, the parties agree that during the negotiations, no one raised or discussed the subject of suing the doctors.

In that regard, Concentra's reliance on *Trimble*, supra, is misplaced. Trimble was not a reformation case, and neither party there was mistaken as to the settlement agreement terms. And, unlike here, Trimble involved the defendant's affirmative misrepresentation and admitted intention not to abide by the express terms of the settlement agreement.

Further, under the tests articulated in the Restatement, neither the circumstances nor the relationship between the parties created a duty to disclose by Poly. The parties were not in a fiduciary or trust relationship, nor was there any expectation that either party or its counsel would act to protect the other party's interests. *See* Restatement (Second) of Torts § 551(2)(a), (e). Quite the contrary, the parties were in an adversarial relationship where each party was expected to act on behalf of itself only, and each counsel had a duty to his or her client to protect the client's interests. *See Ingels v. Ingels, supra* (wife did not research existence of liens on property, and opposing counsel did not have responsibility to inform other party of material fact).

As was the case in *Ingels*, the parties here were dealing at arm's length, and each was represented by counsel. In such an adversarial relationship, concealment by mere silence is not enough to constitute fraud. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. *See Ingels v. Ingels, supra*, 29 Colo. App. at 591, 487 P.2d at 815.

Thus, under these circumstances, we conclude that the failure of Concentra to inspect the settlement agreement adequately before signing it, or to consider thoroughly whether the agreement completely protected its interests, cannot be imputed to Poly as fraudulent behavior. *See Smith v. Whitlow*, 129 Colo. 239, 268 P.2d 1031 (1954)(contract will not be reformed on ground of mistake at instance of the party who prepared it when it appears that alleged lack of knowledge was due to party's failure to exercise reasonable diligence); *Tayyara v. Stetson, supra; see also Brown v. County of Genesee*, 872 F.2d 169 (6th Cir.1989)(where one party enters settlement agreement with incorrect facts, other party does not commit fraud by failing to alert party to mistake).

*Brown v. County of Genesee, supra*, is particularly informative. In *Brown*, an employee who had sued the County for discrimination signed a settlement agreement for reinstatement with a certain pay. The employee later discovered that other employees in her position were earning more pay than that to which she had agreed. During negotiations, the County knew that the employee was not receiving the highest possible pay,

and the County believed it probable that the employee thought that she was. However, the County did not inform the employee of this mistake. The court found no duty on the part of the County, stating "[A]bsent some misrepresentation or fraudulent conduct, the [County] had no duty to advise the [employee] of any such factual error.... The failure of [employee's] counsel to inform himself of the highest pay rate available to his client cannot be imputed to the County as unethical or fraudulent conduct." *Brown v. County of Genesee, supra*, 872 F.2d at 175.

Similarly, here, Concentra's arguments to the contrary notwithstanding, even if Poly had been cognizant of Concentra's intent to obtain a release of the doctors, it was for Concentra to protect its own interests. *See Ingels v. Ingels, supra* (knowledge by one party of liens on property did not give rise to responsibility to disclose that fact to other party).

Concentra relies on out-of-state cases for the proposition that inequitable conduct includes knowledge by one party of another's mistake. However, those cases are all distinguishable because none arose in the context of a litigation settlement agreement, and some of the cases involved evidence of affirmative fraud or inequitable conduct beyond mere silence. *See, e.g., Jones v. Reliable Security Incorporation, Inc.*, 29 Kan.App.2d 617, 28 P.3d 1051 (2001); *Hennig v. Ahearn*, 230 Wis.2d 149, 601 N.W.2d 14 (App.1999).

In contrast, where, as here, an agreement is negotiated in the context of litigation settlement and the only alleged misconduct is silence, the lack of any duty of disclosure precludes a finding of inequitable conduct. The omission in the settlement agreement was caused by Concentra's drafting mistake and its failure to consider the possibility that the doctors would be sued separately or to inquire of Poly regarding its intention to sue the doctors, not by any fraudulent or inequitable conduct on the part of Poly. *See Ingels v. Ingels, supra; see also Brown v. County of Genesee, supra.*

We have not found any reported Colorado case granting reformation of a contract based on a unilateral mistake, where the mistake was a drafting error made by the party later seeking reformation. Further, we have discovered no Colorado authority, nor have the parties cited any, that imposes a duty to disclose one's litigation strategy in settlement discussions when none of the criteria set forth in Restatement § 551(2) is met.

We recognize, on the one hand, that there are policy considerations favoring settlements of disputes and encouraging candor and truthfulness in settlement negotiations. On the other hand, we also recognize the adversarial context of settlement negotiations and equally persuasive policy reasons for not requiring a broad duty of disclosure of litigation strategy during such negotiations. Accordingly, in reaching our conclusion that the trial court here erred in granting reformation, we do not announce a broad rule that a duty to disclose litigation strategy can never arise in the context of settlement negotiations. Rather, we conclude that where mere silence is involved, as opposed to some "trick or contrivance," such a duty only arises where, unlike here, at least one of the criteria in Restatement § 551(2) is met.

The trial court's order granting reformation of the settlement agreement is reversed.

Chief Judge DAVIDSON and Judge DAILEY concur.