Monica David VICKERY,
Plaintiff–Appellant,

v.

EVELYN V. TRUMBLE LIVING TRUST; Kerry Vickery, individually and as Trustee of the Evelyn V. Trumble Living Trust; and Merry Gayle Vickery, Defendants–Appellees.

No. 10CA1362.

Colorado Court of Appeals,
Div. I.

Aug. 18, 2011.

Gregory R. Giometti & Associates, P.C., Gregory R. Giometti, Amanda M. Burke, Denver, Colorado, for Plaintiff–Appellant.

Dietze and Davis, P.C., Renée Ezer, Boulder, Colorado, for Defendants–Appellees Evelyn V. Trumble Living Trust and Kerry Vickery.

Stevens, Littman, Biddison, Tharp & Weinberg, LLC, Dennis J. Tharp, Jessica H. Catlin, Boulder, Colorado, for Defendant–Appellee Merry Gayle Vickery.

Opinion by Judge MILLER.

Plaintiff, Monica David Vickery, appeals the district court's dismissal of her claims against defendants, the Evelyn V. Trumble Living Trust; Kerry Vickery, individually and as trustee of the trust; and Merry Gayle Vickery, as well as its denial of plaintiff's motion for post-judgment relief. We agree with the district court that the complaint fails to state a claim; therefore, we affirm both orders and remand the case with directions.

## I. Background

The principal question presented is whether the amendment of a revocable trust to change the contingent beneficiary from a judgment debtor to the debtor's daughter constitutes a violation of the Colorado Uniform Fraudulent Transfer Act (CUFTA), §§ 38–8–101 to –112, C.R.S.2010. We hold that under the circumstances presented there is no CUFTA violation.

This is the third case involving the Vickerys, to each of whom we refer by first name.[1] Evelyn was the mother of Donald, who was married to Monica, and Merry Gayle, who is the mother of Kerry. Evelyn created her revocable trust, designating herself as settlor, trustee, and beneficiary, and Merry

---

1. Because we are reviewing a motion to dismiss, we accept as true the averments of material fact in the complaint and view the allegations in the light most favorable to the plaintiff. *See Coors Brewing Co. v. Floyd,* 978 P.2d 663, 665 (Colo. 1999).

Gayle as the successor trustee and sole beneficiary upon Evelyn's death.

In the first case, Evelyn and Merry Gayle challenged Monica's administration of Donald's estate in probate court. Evelyn and Merry Gayle lost.

In the second case, Monica sued Evelyn and Merry Gayle for malicious prosecution and defamation. During discovery, Monica obtained a copy of the trust instrument. Monica investigated the assets held in the trust and learned that they were considerable. Monica prevailed at trial and obtained a $141,389 judgment against Evelyn, a $282,071 judgment against Merry Gayle, and an order awarding $48,574 in costs against Evelyn and Merry Gayle, jointly and severally.

After the jury returned its verdict but before judgment was entered in the second case, Evelyn amended the trust instrument, designating her granddaughter, Kerry, as the successor trustee and sole beneficiary upon Evelyn's death. The court entered judgment for Monica, and Evelyn appealed. Evelyn died the following month.

Two days later, Evelyn's counsel in the second case offered to settle Monica's claims against Evelyn on the following terms: in exchange for dismissal of Evelyn's pending appeal, Monica would accept payment of the amount of the judgment against Evelyn and half the amount of the costs awarded jointly and severally against her and Merry Gayle, plus post-judgment interest. Evelyn's counsel did not advise Monica's counsel of the amendment to the trust instrument, and the complaint does not allege that Monica's counsel inquired regarding the status of the trust. Monica accepted the offer, received payment in the amount of about $168,000, and filed a satisfaction of judgment with respect to her claims against Evelyn in that case. The appeal was withdrawn and dismissed.

In the third and instant case, Monica asserted three claims: (1) that the amendment of the trust instrument constituted a fraudulent transfer under the CUFTA; (2) that Merry Gayle and Kerry committed fraudulent concealment by failing to disclose the amendment to the trust instrument before

Monica entered the settlement agreement; and (3) that "two or more of the defendants" engaged in a civil conspiracy to defraud creditors. The complaint requests, among other things, damages and orders "vacating" the amended trust and allowing Monica to levy execution on the trust's assets.

Defendants moved to dismiss the complaint under C.R.C.P. 12(b)(1) and 12(b)(5). The district court ruled that Monica failed to state a claim upon which relief could be granted, dismissed the action under C.R.C.P. 12(b)(5), and denied her C.R.C.P. 59 motion for post-judgment relief.

## II. Issues on Appeal

The parties dispute whether the district court dismissed the case under C.R.C.P. 12(b)(1) (lack of subject matter jurisdiction) or 12(b)(5) (failure to state a claim). The order of dismissal explicitly refers to and relies upon C.R.C.P. 12(b)(5), cites extensively to authorities construing that rule, and makes no mention of C.R.C.P. 12(b)(1) or the terms "jurisdiction" or "standing." Defendants stress, however, that the order concludes that "there has been no injury to a legally protected interest of Monica's." The district court's language parallels the second prong for the test of standing—whether the plaintiff suffered harm "to a legally protected interest." *Ainscough v. Owens,* 90 P.3d 851, 855 (Colo.2004).

Defendants therefore argue that (1) because their motions to dismiss were brought under both C.R.C.P. 12(b)(1) and 12(b)(5), the district court's use of that language indicates that it intended to dismiss for lack of standing and subject matter jurisdiction (notwithstanding its use of a different label) or at least effectively did so; and (2) because Monica did not argue in her opening brief that the court erred in granting a C.R.C.P. 12(b)(1) dismissal, she waived her right to appeal standing and therefore is foreclosed from even appealing the C.R.C.P. 12(b)(5) ruling.

While we recognize possible merit to the first contention, we are not persuaded by the second. Monica's opening brief acknowledges that the district court may have dismissed under C.R.C.P. 12(b)(1) and argues

that she did have a legally protected interest—the very issue that defendants contend makes the court's order a C.R.C.P. 12(b)(1) dismissal. If the label used by the district court is not determinative for purposes of its order, the label used by Monica should not be determinative for purposes of her opening appeal brief. *See Plains Metro. Dist. v. Ken-Caryl Ranch Metro. Dist.*, 250 P.3d 697, 701 (Colo.App.2010) (courts look to essence of claim rather than how it is denominated).

■ Nonetheless, since defendants have raised the issue of standing both in the district court and here, we must address it as a subject matter jurisdictional issue before we may consider the merits. *Ainscough*, 90 P.3d at 855.

### A. Standing

■ The test for standing in Colorado has traditionally been "relatively easy to satisfy." *Id.* at 856. To establish standing, a plaintiff must demonstrate that (1) he or she was injured in fact and (2) the injury was to a legally protected right. *Id.* at 855; *HealthONE v. Rodriguez*, 50 P.3d 879, 892 (Colo. 2002). "A civil plaintiff claiming to have been injured by a defendant's actions has standing to sue even if a court, upon reaching the merits, ultimately determines the defendant committed no wrong." *Grand Valley Citizens' Alliance v. Colo. Oil & Gas Conservation Comm'n*, —— P.3d ——, —— (Colo. App.2010) (*cert. granted* Mar. 21, 2011). When a plaintiff brings a claim under a statute, the standing inquiry turns on whether the statutory provision "can properly be understood as granting persons in the plaintiff's position a right to judicial relief." *Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 932 (Colo.App.2002).

■ Here, the complaint alleges, and it is undisputed, that Monica was a judgment creditor of both Merry Gayle and Evelyn at the time of the alleged fraudulent transfer. As a judgment creditor of those defendants, Monica's allegations supporting her claims for fraudulent transfer and for conspiracy to defraud creditors rest on CUFTA, which indisputably is intended to grant relief to creditors like her from fraudulent transfers. The complaint alleges that Evelyn amended the

trust instrument with the specific purpose and intent of defrauding Monica as a judgment creditor by diverting to Kerry the assets Merry Gayle would otherwise have received for the purpose of defeating Monica's efforts to collect her judgment; that Merry Gayle and Kerry participated in a common scheme to frustrate Monica's rights as a creditor; and that Monica's efforts to collect the judgment have been frustrated as a proximate result of defendants' actions. Thus, Monica has alleged that she was injured in fact by defendants' actions and that the injury was to her legally protected rights as a judgment creditor of Merry Gayle and Evelyn.

The complaint also alleges that Merry Gayle and Kerry fraudulently concealed a material fact from Monica, she acted upon that concealment by entering into the settlement agreement compromising the amount of her judgment, and, as a result, she sustained damages. Thus, again she has alleged injury in fact as a result of the actions of Merry Gayle and Kerry and injury to her legally protected right to collect her judgment.

We therefore conclude that the allegations in the complaint concerning the fraudulent transfer, fraudulent concealment, and civil conspiracy are sufficient to meet the "relatively easy" test for standing.

### B. C.R.C.P. 12(b)(5) Dismissal

The existence of standing does not, however, mean that Monica has stated a claim for purposes of C.R.C.P. 12(b)(5). Monica contends that the district court erred by concluding that she failed to state a claim in her complaint. For the reasons given below, we disagree.

#### 1. Standard of Review

When reviewing a district court's dismissal of a complaint for failure to state a claim, we apply the same standards as the district court. *Schoen v. Morris*, 15 P.3d 1094, 1096 (Colo.2000). Our review is de novo. *Western Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155, 1158 (Colo.App.2008). The purpose of a motion under C.R.C.P. 12(b)(5) is to test the formal sufficiency of the complaint.

*Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911 (Colo.1996). Therefore we must accept all well-pleaded facts as true, viewing the allegations in the light most favorable to the plaintiff. *Public Serv. Co. v. Van Wyk*, 27 P.3d 377, 386 (Colo.2001); *Western Innovations*, 187 P.3d at 1158. We may also consider documents attached to the complaint when ruling on a motion to dismiss. *See Stauffer v. Stegemann*, 165 P.3d 713, 716 (Colo.App. 2006). However, we are not required to accept as true legal conclusions couched as factual allegations, and a complaint properly may be dismissed if the substantive law does not support the claims asserted. *Western Innovations*, 187 P.3d at 1158.

### 2. CUFTA Claim

Monica asserts her first claim under CUF-TA. Section 38–8–105(1)(a), C.R.S.2010, provides, in pertinent part, as follows:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor ... if the debtor made the transfer or incurred the obligation ... [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.

The statute defines a "debtor" as "a person who is liable on a claim." § 38–8–102(7), C.R.S., 2010.

The complaint alleges that the amendment of the trust instrument constituted a "transfer" but does not specify whose conduct forms the basis of the claim. On appeal, Monica argues that she has stated a claim against Merry Gayle, Evelyn, the trust, and Kerry.[2] We consider the claims against each defendant in turn.

■ Monica's argument that she has asserted a valid fraudulent transfer claim against Merry Gayle fails because Evelyn, not Merry Gayle, amended the trust instrument. Although Monica argues that Merry Gayle participated in amending the trust instrument and that the amendment may be an "illusory sham," the complaint states that Evelyn "had sole and complete possession of and control over" the trust while she was

alive. Thus, even assuming the amendment could constitute a transfer of an asset under CUFTA, Merry Gayle is not liable under CUFTA based on these allegations because she did not make the alleged transfer. *See* § 38–8–105(1)(a) (describing fraudulent transfer, in part, as a transaction made by a debtor).

■ Monica argues that she has stated a CUFTA claim against Evelyn and the trust because she collected only half of the judgment for costs entered jointly and severally against Evelyn and Merry Gayle. However, the complaint does not allege that Evelyn's amending the trust instrument hindered or delayed Monica's *ability* to collect what *Evelyn* owed her. To the contrary, the complaint states that the trust contained considerable assets (even on the date of filing) and that a settlement was reached two days after Evelyn's death whereby the trust paid Monica about $168,000 and the pending appeal in the second case was dismissed. Thus, the amendment of the trust instrument did not deprive Evelyn of funds with which to satisfy her debt to Monica. Indeed, the amendment of the trust instrument did not alter in any way the assets available to pay Evelyn's debts.

Monica nonetheless contends that a CUFTA claim can be based on a transfer by a third party who is not a debtor, relying on *Filip v. Bucurenciu*, 129 Cal.App.4th 825, 28 Cal.Rptr.3d 884 (2005). The assets in question in that case were originally owned jointly by a husband and wife, who transferred them to a family trust. While the husband faced imminent entry of a judgment against him, they entered into a property settlement, as part of a dissolution of marriage. The property settlement resulted in the transfer of some of the assets in the trust to the wife. She later transferred those assets to a corporation that she and her daughter owned, and the corporation later made further transfers. *Id.* at 887. The court held that the transfers made pursuant to the property settlement

2. All parties appear to assume that the trust or Kerry represents or succeeds to the estate of Evelyn for purposes of liability. Monica suggests that Kerry may be the personal representative or administrator of the estate. Because the issue is not disputed, for purposes of this opinion we adopt, without deciding, the parties' assumption.

and subsequent transfers by the wife and her corporation were fraudulent under California's Uniform Fraudulent Transfer Act. *Id.* at 893–94.

*Filip* is distinguishable from the present case because, unlike the husband there, Merry Gayle never transferred any assets into the trust; the only assets in the trust were contributed by Evelyn. Thus, the amendment of the trust instrument by Evelyn did not "transfer" assets originally owned and transferred to the trust by Merry Gayle.

 To the extent Monica argues that a CUFTA claim can be based on an alleged transfer by a third party debtor (Evelyn) for the purpose of hindering, delaying, or defrauding a creditor's ability to collect on a debt from the relevant debtor (Merry Gayle), she did not present this argument to the trial court, and she made it in only a conclusory fashion, without citation to authority, in her opening appeal brief. We therefore need not consider it. *See Wycoff v. Grace Community Church,* 251 P.3d 1260, 1269 (Colo.App.2010) (appellate court will reverse "very rarely in civil cases" based on unpreserved claim of error only when necessary to avert unequivocal and manifest injustice); *see also Barnett v. Elite Props. of America, Inc.,* 252 P.3d 14, 19 (Colo.App.2010) ("We will not consider a bald legal proposition presented without argument or development."); *People v. Venzor,* 121 P.3d 260, 264 (Colo.App.2005) (declining to review issues presented in a "perfunctory or conclusory manner"). Even assuming that the issue was properly before us and that Evelyn's amendment of the trust constituted a "transfer," Monica has failed to point to, and we have been unable to locate, any authority supporting the view that CUFTA or any of its counterparts in other states reaches a transfer by a debtor with intent to hinder collection of the creditor's claim against someone else.

We therefore conclude that the complaint fails to state a CUFTA claim against Evelyn or Merry Gayle.

 Monica's CUFTA claim against the trust and Kerry as trustee is derivative. For example, Monica's opening brief states that "[Evelyn], acting as Trustee of the trust, thus perpetrated a fraud upon [Monica] by amending the Trust, and the Trust is liable for [Evelyn's] actions." The complaint does not allege that the trust itself made any transfer violating CUFTA. Therefore, because Monica's claim against Evelyn fails, Monica has likewise failed to state a CUFTA claim against the trust or Kerry.

Thus, the trial court properly dismissed the CUFTA claim.

### 3. Fraudulent Concealment Claim

The elements of a claim for fraudulent concealment are:

> (1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Nielson v. Scott,* 53 P.3d 777, 779 (Colo.App. 2002).

 To succeed on a claim for fraudulent concealment, a plaintiff must show that the defendant had a duty to disclose material information. *Poly Trucking, Inc. v. Concentra Health Servs., Inc.,* 93 P.3d 561, 564 (Colo.App.2004). Colorado courts have looked to the Restatement (Second) of Torts § 551(2) (1977) for guidance on this issue. *See, e.g., Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.,* 965 P.2d 105, 111 (Colo.1998); *Poly Trucking,* 93 P.3d at 564. Section 551(2) provides as follows:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>
> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Whether such duty exists is a question of law. *Poly Trucking,* 93 P.3d at 564.

Contrary to Monica's contention on appeal, the complaint alleges that Merry Gayle or Kerry—not Evelyn or her estate—had a duty to disclose that the trust instrument had been amended before Monica accepted the settlement offer. However, the complaint fails to allege circumstances under which such a duty would arise.

As a preliminary matter, we note that Merry Gayle did not have a duty to disclose anything because she was not a party to the settlement agreement, which pertained only to Monica's judgment against Evelyn.

 Nor does the complaint allege facts that show that Kerry, as trustee, had such a duty under any of the tests articulated in the Restatement. The complaint does not allege a fiduciary relationship between Kerry and Monica, and neither Kerry nor the trust is alleged to have made any affirmative representations about the assets of the trust during the settlement negotiations or at any other time. Moreover, where the parties are in an adversarial relationship and each is represented by counsel, concealment by mere silence does not constitute fraud. *Poly Trucking,* 93 P.3d at 565. "There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Id.*

Monica entered into a settlement of her claim against Evelyn, which included payment of half the costs for which Evelyn was jointly and severally liable in exchange for dismissal of a pending appeal. In this transaction, neither Kerry nor the trust had a duty under the Restatement to disclose information about the likelihood that Monica would be able to collect her judgment against Merry Gayle or the status or contents of any trust, will, or other instrument.

Therefore, the district court properly dismissed Monica's fraudulent concealment claim.

### 4. Civil Conspiracy Claim

 "To establish a civil conspiracy in Colorado, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Nelson v. Elway,* 908 P.2d 102, 106 (Colo.1995). Civil conspiracy is a derivative cause of action that is not actionable per se. *Double Oak Construction, L.L.C., v. Cornerstone Development Int'l, L.L.C.,* 97 P.3d 140, 146 (Colo.App.2003). A transfer that violates CUFTA is a legal wrong that can support a claim of conspiracy. *Id.* If, however, "the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself." *Id.*

 Contrary to Monica's contention that she may pursue a common law claim for conspiracy to defraud a judgment creditor even if her other claims fail, *Double Oak* clearly establishes that a conspiracy claim fails in the absence of a legal wrong to support it. *Id.* ("[T]he elements for a civil conspiracy claim require that the underlying acts be unlawful and create an independent cause of action."). Because the complaint did not allege facts supporting the underlying CUFTA and fraudulent concealment claims, or any other unlawful acts, we conclude that the district court properly dismissed Monica's claim for civil conspiracy.

### C. Attorney Fees

 Defendants request attorney fees for this appeal, citing sections 13–17–102 and –201 as well as C.R.C.P. 11 and C.A.R. 38(d). We conclude that attorney fees are appropri-

ate under section 13–17–201, which mandates an award of attorney fees when a trial court dismisses a tort action under C.R.C.P. 12(b), but not under the other provisions cited.

 A party awarded attorney fees in the district court may recover reasonable attorney fees and costs for successfully defending the appeal. *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo.App.2006). In this case, the district court stayed the hearing on attorney fees pending this appeal. On remand, the court shall determine the amount of fees to be awarded based on the order of dismissal as well as defendants' reasonable attorney fees on appeal. *See* C.A.R. 39.5; *Dubray v. Intertribal Bison Co-op.*, 192 P.3d 604, 608 (Colo.App.2008).

The orders are affirmed, and the case is remanded to address the attorney fees issues.

Judge TAUBMAN concurs.

Judge TERRY specially concurs.

Judge TERRY specially concurring.

I concur in the majority's reasoning and the result reached. I write separately because the result in this case points to a potential flaw in the Colorado Uniform Fraudulent Transfer Act (CUFTA), sections 38–8–101 to –112, C.R.S.2010, which the General Assembly may wish to address.

CUFTA provides remedies to creditors of debtors who transfer property with the intent to defraud creditors. §§ 38–8–105, –106, –108, C.R.S.2010.

Here, plaintiff Monica Vickery's complaint alleges the following facts pertinent to her claim under section 38–8–105, which we must assume are true for purposes of reviewing the dismissal of her complaint under C.R.C.P. 12(b)(5), *see Public Serv. Co. v. Van Wyk*, 27 P.3d 377, 386 (Colo.2001):

- The Evelyn V. Trumble Living Trust was created by Evelyn Trumble.
- As settlor and trustee, Evelyn had the sole possession and control over the trust.
- Before the trust was amended, Evelyn had designated her daughter, Merry Gayle Vickery, as the sole beneficiary and successor trustee, and the assets of the trust were to be distributed to Merry Gayle upon Evelyn's death.
- The jury returned a verdict for Monica and against Evelyn for $92,502 in compensatory damages plus $41,500 in punitive damages.
- The jury returned a verdict for Monica and against Merry Gayle for $155,002 in compensatory damages and $144,500 in punitive damages.
- Within about a month after these verdicts were returned against Evelyn and Merry Gayle, and shortly after Monica had filed a motion for award of costs jointly against Evelyn and Merry Gayle and a bill of costs, Evelyn, knowing of these events, amended the living trust.
- The amendment of the trust changed the sole beneficiary and successor trustee from Merry Gayle to Merry Gayle's daughter, Kerry.
- When Evelyn amended the trust to change the beneficiary and successor trustee, she knew that she had a serious illness, and she made the change with the specific purpose and intent of defrauding Monica as a judgment creditor by diverting to Kerry assets that Merry Gayle otherwise would have received from the trust upon Evelyn's death, and to defeat Monica's efforts to collect the judgment against Merry Gayle.
- Within a month after the trust amendment, the trial court entered judgment against Evelyn individually for $141,389; entered judgment against Merry Gayle individually for $282,071; and entered a costs judgment jointly and severally against Evelyn and Merry Gayle for $48,574.
- Within a month after entry of judgment, Evelyn died.
- Two days after Evelyn's death, counsel for Evelyn offered to settle Monica's claims against Evelyn in exchange for the full amount of the judgment against her, plus certain postjudgment interest, and half the amount of the joint and several costs award, and Monica accepted the offer. Evelyn's counsel did not

disclose the change in trust beneficiary prior to the settlement.

- "Merry Gayle ... and/or Kerry ..., acting in concert with the Evelyn V. Trumble Living Trust [sic], by express or tacit agreement, participated in a common plan, scheme or design to defeat and frustrate [Monica's] legitimate rights as a creditor by concealing the existence of the Amended Trust and inducing [Monica] to accept [Evelyn's] offer of settlement."

- The amendment of the trust was a "transfer" under section 38–8–102(13), C.R.S.2010, and no value was given for the transfer, which was fraudulent.

- Merry Gayle has had access to the income and assets of the trust to pay for personal expenses, including her legal fees.

- Counsel for Merry Gayle has admitted that Evelyn amended the trust for the specific purpose of frustrating and defeating any attempt by Monica to collect the judgment from Merry Gayle.

These allegations contain many of the elements necessary to sustain a claim under CUFTA section 38–8–105. Because of the division's resolution of the issues, we do not decide (1) whether the trust amendment was a transfer under section 38–8–102(13); or (2) whether the trust was an "asset" of Merry Gayle as defined in section 38–8–102(2) before the change of beneficiary—a prerequisite to finding a "transfer" under section 38–8–102(13).

Assuming that, as the complaint alleges, the trust amendment was a "transfer," a critical element is missing to sustain a CUFTA claim as it relates to the judgment owed by Merry Gayle: the complaint does not allege that *the debtor whose debt she now seeks to collect* (i.e., Merry Gayle) made the transfer, as required by the statute. *See* § 38–8–105 (imposing liability for fraudulent transfers made "by a debtor" under enumerated circumstances); *see also* § 38–8–106(1)–(2) (same).

Monica contends on appeal that because *Evelyn* was a debtor at the time she made the transfer, the statute applies to her conduct. That contention is unavailing. Because it is alleged that Evelyn knew that a jury verdict was pending against her when she made the transfer, we must assume she knew she was a "debtor" (defined in section 38–8–102(7) as "a person who is liable on a claim"). However, the complaint alleges that just after Evelyn's death, her estate entered into a settlement that resulted in her being fully released from her own liability to Monica. Thus, to the extent Evelyn is alleged to have tried to defraud Monica, she could not have defrauded her with respect to Evelyn's *own* debt.

Rather, the only relevant allegation pertaining to Evelyn is that she was trying to defraud Monica with respect to *Merry Gayle*'s debt. But Evelyn was not the debtor with respect to Merry Gayle's debt. To the extent that, on the date of the trust amendment, Evelyn knew she might soon be found jointly and severally liable with Merry Gayle as to the costs award, Evelyn could potentially have been viewed as attempting to defraud Monica with regard to Evelyn's own debt; however, the trial court correctly ruled that Monica's CUFTA claim for that conduct is barred by the terms of the settlement.

Again assuming the trust amendment could qualify as a transfer, it strikes me as anomalous that there is no CUFTA claim that could be sustained *against Merry Gayle, Kerry, or the trust* for the alleged conduct with respect to Merry Gayle's debt. Taking the complaint allegations as true, the trust, in concert with Merry Gayle or Kerry, conceived a scheme to defraud Monica as Merry Gayle's creditor; Merry Gayle was the intended beneficiary of the trust, and expected to receive it; Evelyn changed the beneficiary from Merry Gayle to Kerry, the daughter of Merry Gayle, specifically to ensure Monica would not be able to recover her judgment against Merry Gayle; and, despite the change in beneficiary, Merry Gayle received monetary benefits from the trust.

Again assuming this transaction could qualify as a transfer, it appears to have defeated a creditor's rights in a manner for which CUFTA was intended to provide a remedy, and resembles cases where a debtor has transferred assets to a spouse or other family member for the purpose of defrauding creditors, while the transferor continued to

receive the benefit of those assets after the transfer. *See, e.g., Filip v. Bucurenciu,* 129 Cal.App.4th 825, 28 Cal.Rptr.3d 884, 888–90 (2005) (transfers of real estate parcels among debtor, spouse, and family trust for purpose of defrauding creditors held to violate Uniform Fraudulent Transfers Act).

Assuming, as I must in reviewing the dismissal of Monica's claims, that the complaint allegations are true, then Evelyn and Merry Gayle appear to have found a valid loophole in section 38–8–105. Specifically, if a debtor does not actually make a transfer, but conspires with another party—who has control over assets that are expected to become the debtor's—to have that party execute the transfer in order to defraud a creditor, while the debtor still obtains the benefit of the transferred assets, such a transfer does not appear to violate the statute, even if all the other elements are met. I question whether the General Assembly would have intended such a loophole to be present, had that body been aware of its existence.

Nevertheless, because it exists, I must agree with the majority that the elements of a fraudulent transfer under CUFTA have not been alleged here, and that the trial court's judgment must therefore be affirmed.