JUSTICE GABRIEL,
dissenting.
181 Today, the majority jettisons a rule that has stood the test of time for over fifty years, based largely on an asserted preference for maintaining uniformity with federal court interpretations of analogous federal rules of procedure. In reaching this result, the majority misperceives the existing state of the law in Colorado and grafts onto C.R.C.P. 8 a "plausibility" requirement that the rule does not contain and that other courts have correctly recognized results in a loss of clarity, stability, and predictability. Even more concerning, the majority's preferred standard allows a single district judge, at the incipient stages of a case, to weigh what the judge speculates the plaintiff will plausibly be able to prove, based on the individual judge's subjective experience and common sense, and then to decide whether the plaintiff's action is viable.
*598 82 I cannot subscribe to such a standard, which I believe will deny access to justice for innumerable plaintiffs with legitimate complaints. Indeed, the majority's application of its newly adopted standard in this case demonstrates the overreaching nature and ultimate unfairness of that standard.
133 Accordingly, I respectfully dissent.
I. Current Law and the Plausibility Standard
134 As the majority correctly observes, in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), abrogated by Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the United States Supreme Court concluded that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove "no set of facts" in support of his or her claim. Maj. op. 1. The majority also correctly observes that this standard was first cited in an opinion of this court over fifty years ago. See Sprott v. Roberts, 154 Colo. 252, 390 P.2d 465, 467 (1964) (Frantz, J., concurring in the result). We have consistently adhered to that standard, without apparent difficulty or controversy, ever since.
135 Notwithstanding this fifty-year history, the majority now assails the Conley standard. In doing so, however, the majority does not acknowledge either our long-established rules of notice pleading or the well-settled principles that inform how the Conley standard has been implemented in practice.
186 It has been settled since before Conley that a plaintiff need not set out in detail the facts on which his or her claim is based. See Conley, 355 U.8. at 47, 78 S.Ct. 99. To the contrary, both Fed. R. Civ, P. 8(@)(2) and C.RC.P. 8(a)(2) require only a "short and plain statement" of the claim that will give the defendant fair notice of what the plaintiffs claim is and the grounds on which it rests. Conley, 355 U.S., at 47, 78 S.Ct. 99; Smith ex rel. Leech v. Mills, 123 Colo. 11, 225 P.2d 483, 484 (1950); see also Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("Federal Rule. of Civil Procedure 8(2)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief" Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2); Twombly, 550 U.S. at 555, 127 S.Ct. 1955).
187 It is likewise settled that in considering a motion to dismiss for failure to state a claim, a court assesses the "well-pleaded" factual allegations of a complaint and ignores conclusory allegations or allegations purporting to assert principles of law. See Ruiz v. McDonnell, 299 F.3d 1173, 1181 (10th Cir.2002) (noting that for purposes of Fed. R. Civ. P. 12M)(6), all well-pleaded facts, as distinguished from conclusory allegations, must be taken as true); Fernandez-Montez v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993) ("[Clonelusory allegations or legal conclusions masquerading as factual conclu-gions will not suffice to prevent a motion to dismiss."); Gray v. Univ. of Colo. Hosp. Auth., 2012 COA 113, ¶ 37, 284 P.3d 191, 198 (noting that conclusory allegations are insufficient to defeat a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim); Vickery v. Evelyn V. Trumble Living Tr., 277 P.3d 864, 869 (Colo.App.2011) (noting that for purposes of a C.R.C.P. 12(b)(5b) motion, courts must accept all well-pleaded facts as true but are not required to accept as true legal conclusions couched as factual allegations).
38 These principles, which are central to the Conley standard, recognize the practical limitations on how much a plaintiff can reasonably be required to plead, particularly given that the plaintiff often lacks information that is in the defendant's exclusive possession and has no means of obtaining that information absent discovery. See Conley, 355 U.S. at 47-48, 78 S.Ct. 99 (noting that (1) the civil rules simplified notice pleading standard was made possible by the liberal opportunity for discovery and other pretrial procedures established by the rules to allow the parties to flesh out more precisely the basis of a plaintiff's claim and (2) "[tlhe Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits").
*599 139 As amicus curiae Colorado Plaintiff Employment Lawyers Association observes, this kind of "information asymmetry" is especially acute in cases in which a plaintiff must prove the defendant's motives and state of mind. See Br. of Amicus Curiae Colorado Plaintiff Employment Lawyers Ass'n, at 6-7. See generally Arthur R. Miller, From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure, 60 Duke L.J, 1, 48-46 (2010) (degeribing in detail the information asymmetry problem posed by Twombly and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), particularly in cases involving questions of intent and mali¢e). Indeed, as discussed more fully below, the information asymmetry in this case underlies the majority's conclusion that Hall's complaint should be dismissed for failure to state a claim on which relief can be granted. Maj. op. 11 25-28.
140 The foregoing principles do not, however, allow a plaintiff to allege a claim and then rely on compulsory process to discover whether grounds for the action existed in the first place, as the majority suggests,. See maj. op. II 17. As noted above, a complaint must contain and is assessed based on its "well-pleaded allegations," and not on any conclu-sory allegations or allegations of law. Moreover, all allegations of a complaint (and any other pleading) are subject to the requirements of CRCP. 11, which requires all pleadings of a party represented by an attorney to be signed by at least one attorney of record, and which further provides:
The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
Accordingly, a plaintiff may not properly make baseless allegations and then later rely on discovery tools to try to find evidence to support such claims.
141 For all of these reasons, I believe that the Conley standard, as it has been refined over time, has worked precisely as it was intended. Neither trial nor appellate courts in Colorado have had any difficulty in applying this standard. Nor have I seen any evidence that this standard has contributed to a flood of frivolous eases overwhelming our legal system, or that courts properly exercising their ample case management authority have had any difficulty in weeding out un-meritorious claims or in protecting defendants from needless expense and harassment. Accordingly, I am not persuaded that the existing standard has posed a problem in need of a solution, much less the sea change in pleadings practice that I- believe the majority opinion will effect.
142 Notwithstanding the foregoing, the majority chooses to adopt the Twombly and Iqbal plausibility standard, see Iqbal, 556 U.S. at 679, 129 S.Ct. 1987 (noting that to survive a motion to dismiss, a complaint must state a "plausible" claim for relief); Twombly, 550 U.S. at 556, 127 S.Ct. 1955 (same), principally based on an asserted need for uniformity between how federal courts construe Fed. R. Civ, P. 8 and how Colorado courts construe the Colorado analogue, C.R.C.P. 8. For a number of reasons, I am unpersuaded.
143 First, although we look to federal decisions interpreting federal rules for guidance, we are not bound to interpret our rules of civil procedure in the same way that the United States Supreme Court interprets its rules. See Garcia v. Schneider Energy Servs., Inc., 2012 CO 62, ¶ 10, 287 P.3d 112, 115. This is particularly true when, as here, the language of our respective rules differs.
144 As pertinent here, both Fed. R. Civ. P. 8 and C.R.C.P. 8 require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); C.R.C.P. 8(a)(2). Both rules also require that each allegation of a pleading be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); CR.C.P. 8(e)(1). Unlike its federal counterpart, however, the Colorado rule proceeds to allow a pleader who lacks direct knowledge to make allegations "upon information and belief." C.R.C.P. 8(e)(1). This difference suggests to me a preference in the Colorado rules for a more lenient pleading standard than the "plausibility" standard *600 adopted in Twombly, 550 U.S, at 556, 570, 127 S.Ct. 1955, and expanded in Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.
T45 Second, the Twombly and Iqbal "plan-sibility" standard is neither set forth in nor required by Fed, R. Civ. P. 8 or Fed, R. Civ. P. 12(b)(6) (governing motions to dismiss for failure to state a claim on which relief can be granted). Nor do I perceive any language in Colorado's corresponding provisions, C.R.C.P. 8 or C.R.C.P. 12(b)(5), that supports the adoption of such a standard, To the contrary, I believe that such a standard is inconsistent with the purposes of the foregoing rules generally and with several of our pleading rules in particular.
46 C.R.G,P, 8, C.R.C.P. 12(b)(5), and their federal counterparts require only fair notice of a claim, and they envision the use of proper case management and other devices set forth in the civil rules to clarify and address the merits of that claim. See, eg., Conley, 355 U.S, at 47-48, 78 S.Ct. 99; Smith ex rel. Leech, 225 P.2d at 484. The plausibility rule is contrary to these purposes.
T47 Likewise, the "factual. enhancement" that the plausibility standard requires, see Twombly, 550 U.S. at 557, 127 S.Ct. 1955, is inconsistent with (1) C.R.C.P. 8(a)(2), which mandates only "a short and plain statement of the claim showing that the pleader is entitled to relief," see Walsh v. U.S. Bank, N.A., 851 N.W.2d 598, 605 (Minn. 2014) (noting that the plausibility standard raises the bar for claimants and thereby conflicts with Minnesota's counterpart to C.R.C.P. 8, which preferred non-technical, broad-brush pleadings), and (2) C.R.C.P. 8(e)(2), which allows for hypothetical pleading. |
48 And the "factual enhancement" requirement is inconsistent with C.R.C.P. 9, which sets forth when certain matters must be pleaded with additional specificity or particularity, and which expressly provides that "I'mJalice, intent, knowledge, and other condition of mind of a person may be averred generally." C.R.C.P. 9(b). Under a plausibility standard, all matters, including matters relating to a person's state of mind, arguably must be pleaded with specificity, and this would be difficult, if not impossible, when the information that the plaintiff needs to satisfy such an enhanced pleading standard is within the defendant's exclusive possession and control, See Miller, 60 Duke L.J. at 48 ("It is uncertain how plaintiffs with potentially meritorious claims are expected to plead with factual sufficiency without the benefit: of some discovery, especially when they are limited in terms of time or money, or have no access to important information that often is in the possession of the defendant, especially when the defendant denies access.") (footnotes omitted). As a result, the plausibility standard will likely result in the disproportionate. dismissal of meritorious claims, thereby closing the courthouse doors to many deserving claimants when the pleading rules were, in fact, designed to open the doors for them. See Twombly, 550 U.S. at 575, 127 S.Ct. 1955 (Stevens, J., dissenting) ("Under the relaxed pleading standards of the Federal Rules, the idea was not to keep litigants out of court but rather to keep them in. The merits of a claim would be sorted out during a flexible pretrial process and, as appropriate, through the erucible of trial.").
49 Third, I believe that the "plausibility" standard is unworkable and gives far too much authority to judges to dismiss elaimg, even before the defendant has been required to answer the complaint, based on subjective and inherently speculative factors. In Iqbal, 5566 U.S. at 679, 129 S.Ct. 1987, the Court explained what it meant by "plausible": "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." See also Plausible, Webster's Third New Int'l Dictionary (2002) (defining "plausible," in pertinent part, as "superficially worthy of belief CREDIBLE"),
50 Such a standard, which is subjective on its face, allows motions to dismiss to turn on the "judicial experience and common sense" of the particular judge who happens to be assigned to the case. Moreover, such a standard requires the judge to speculate as to the evidence that a plaintiff will likely be able to present and then to weigh that presumed evidence-before the defendant has even submitted an answer to the complaint-to decide whether a claim based on such evidence would be "plausible" (itself an inher *601 ently amorphous concept). See Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 431-32 (Tenn. 2011) ("[The plausibility standard incorporates an evaluation and determination of the likelihood of success on the merits-a judicial weighing of the facts pleaded to see if they 'plausibly' present a claim for relief-at the earliest stage of the proceedings, before a sworn denial is even required."). In this regard, the "plausibility" standard approaches a summary judgment test, albeit without any evi-dentiary record, Cf. Andersen v. Lindenbaum, 160 P.3d 237, 289 (Colo. 2007) ("To avoid summary judgment, the evidence presented in opposition to such a motion must ... be sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party.").
51 I cannot see how such a standard represents an advance over our present rule, which requires courts to assess the well-pleaded allegations of the complaint to determine whether, if true, such allegations set forth a viable claim for relief, To the contrary, I agree with the Tennessee Supreme Court's assessment that Twombly and Iqbal have resulted in "a loss of clarity, stability, and predictability in federal pleadings practice." Webb, 846 S.W.3d at 481. I fear that the same outcome is now likely in Colorado.
152 Fourth, in trumpeting the need for uniformity between the state and federal standards, the majority suggests that adopting a plausibility standard is necessary to expedite litigation and avoid unnecessary expense. See maj. op. 1 19, The majority, however, does not adequately account for the case management tools that we have recently implemented to achieve the majority's desired ends. Specifically, although the majority's concern for expediting litigation and avoiding unnecessary costs, particularly with respect to discovery, is appropriate, we recently adopted significant amendments to our rules of civil procedure to address these very concerns. See generally Richard P. Holme, New Pretrial Rules for Civil Cases-Part II: What is Changed, 44 Colo. Law. 111 (July 2015) (discussing the series of amendments to the Colorado Rules of Civil Procedure that became effective on July 1, 2015 and that were designed to reduce significantly the costs and delays in litigation, particularly with respect to discovery matters). I have every confidence in our trial judges' abilities to' implement these rules to achieve the desired ends. I therefore see no reason to alter our longstanding pleading rules, particularly in the context of this litigation as opposed to through the normal rulemaking process, to try to achieve the same ends.
153 Finally, I am unconvinced by the majority's suggestion that adopting the plausibility standard is necessary to avoid the undesirability of having "vastly different outcomes result from nothing more than a choice of forums." Maj. op. % 17. The federal and Colorado standards 'have been different for nine years, and I have seen no evidence to suggest that these different standards have resulted in a spike in forum-shopping or in "vastly different outcomes" (although I would anticipate that under the federal standard, some meritorious complaints likely have been dismissed).
54 For these reasons, I see no compelling reason to overturn more than fifty years of precedent in order to adopt a plausibility standard that I believe is unworkable and unfair, See Walsh, 851 N.W.2d at 604 ("The doctrine of stare decisis directs us to adhere to our former decisions in order to promote the stability of the law and the integrity of the judicial process,. We therefore require 'a compelling reason to overrule our precedent,... [The defendant] has not presented a compelling textual reason to overrule [the cases setting forth the prevailing pleading standards in Minnesotal.") (quoting Oanes v. Allstate Ins. Co., 617 N.W.2d 401, 406 (Minn. 2000).
II. Application
(55 The overreaching nature and unfairness of the plausibility standard that I have identified above are well demonstrated by the majority's application of that standard in this case.
56 The majority concludes that Hall's complaint failed to sufficiently allege that Warne acted improperly in inducing a breach | or making performance of the contract between Hall and Ensign impossible. Maj. op. 1 25. In reaching this conclusion, the majority deems Hall's allegations to be conclusory and sees no factual allegations plausibly sug *602 gesting that Warne was acting out of unrelated personal animus toward Hall or to the detriment, rather than the benefit, of the town for personal reasons. Id, at M 27-28. I do not agree with the majority's reading of Hall's complaint.
157 To establish a claim for intentional interference with contract, a plaintiff must prove that the defendant (1) was aware of a contract between two parties, (2) intended that one of the parties breach the contract, and (8) induced the party to breach or make it impossible for the party to perform the contract. Krystkowiak v. W.O. Brisben Cos., 90 P.3d 859, 871 (Colo. 2004). In addition, the defendant must have acted "improperly" in causing the result. Id.
158 To determine whether the defendant acted improperly, courts consider the following factors:
(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.
Restatement (Second) of Torts § 767 (1979); accord Memorial Gardens, Inc. v. Olympian Sales & Mgmt. Consultants, Inc., 690 P.2d 207, 210 & n. 7 (Colo.1984).
159 Here, Hall alleged, in substance, the following facts:
e Hall entered into a contract to sell certain property in the Town of Gil-crest to Ensign.
e - In subsequent meetings with the Town Planner and the Town Board, the Town imposed a series of conditions on Ensign. These conditions were onerous, and many of them had no lawful basis either in the Town's own ordinances or in any other applicable laws or regulations.
e - In May and June 2007, the Town made additional baseless demands on Ensign. As a result, Ensign became increasing ly frustrated and began to look elsewhere for its business expansion.
At a July 16, 2007 meeting of the Town Board, which Warne, the Town's may- or, attended, Hall explained that if the Town continued to demand more and more conditions of Emsign that were not tied to applicable law or regulations, then Ensign would withdraw from the contract to buy Hall's property and find somewhere else to do business.
The Board then unanimously approved Ensign's site plan and application (Warne did not vote).
After this unanimous vote, Warne stormed out of the meeting room and stated that she was not going to allow Ensign to do business in Gilerest.
A former mayor and planning commission member stated that Warne exercised control over all land use matters and would have used any means at the Town's disposal to ensure that Ensign would never meet the requirements necessary to build, regardless of what had been approved by the Board.
Consistent with this statement, after the Board unanimously approved Ensign's site plan and application, and notwithstanding the fact that Hall had advised the Board (and Warne) that further conditions would cause Ensign to terminate its contract with Hall, the Town imposed still more conditions on Ensign. These conditions again imposed requirements beyond those required by the Town code; they were not connected to, or were disproportionate to, any impact that Ensign's operations would have had on the Town; and they were not reasonably related to the public health, safety, or welfare of the Town or its residents.
As a result of these new requirements and exactions, Ensign terminated its contract with Hall, as it said it would do (and as Warne was advised it would do).
Warne had previously exhibited animosity toward Hall, the additional ex-actions and conditions were imposed at *603 Warne's insistence and on her order, and Warne's actions were motivated by malice toward Hall.
60 In my view, and as the division below concluded, Hall v. Town of Gilcrest, No. 12CA0719, slip op. at 7-12, 2014 WL 260873 (Colo. App. Jan. 23, 2014), these allegations more than adequately alleged the requisite elements of an intentional interference with contract claim. Indeed, I would so conclude even were I to apply the plausibility standard.
161 Specifically, it appears undisputed that Hall properly alleged the existence of a contract between himself and Ensign and that Warne knew of this contract. Hall has also alleged specific facts to establish that Warne intended for Ensign to terminate this contract and that she either induced Ensign to breach the contract or made Ensign's performance impossible. For example, as noted above, Hall alleged that (1) Warne was told ° that Ensign would terminate the contract if more conditions were imposed; (2) she stated her intention to ensure that Ensign would not do business in Gilerest; and (8) knowing that Ensign would terminate the contract if further conditions were imposed, she orchestrated the imposition of additional unreasonable (and legally unfounded) conditions, which, in fact, induced Ensign to terminate its contract with Hall.
162 Finally, Hall has sufficiently alleged that Warne's conduct was improper. As noted above, he alleged that after the Town Board had unanimously approved Ensign's site plan and application, Warne acted unilaterally to impose unprecedented and unreasonable conditions that were inconsistent with the Town code, and Hall alleged that Warne did so out of malice toward him and with the intent of ensuring that Ensign would terminate its contract with him. In my view, such allegations are not at all concluso-ry, and they clearly and sufficiently assert that Warne was acting out of unrelated personal animus toward Hall, rather than for the Town's benefit (the Town Board, after all, had unanimously gpproved the deal).
63 Although the majority deems Hall's allegations insufficient, it is not clear to me, and the majority does not indicate, what more Hall could possibly have alleged. This case reflects precisely the type of information asymmetry scenario discussed above, in which a party is required to make allegations about another party's state of mind. Absent an ability to read Warne's mind, Hall could do no more than plead conduct reflecting her improper motives, and he has done that with what I perceive to be ample specificity.
T64 In these cireumstances, it is clear to me that Warne has received the reasonable notice of the nature and basis of Hall's claim to which she was entitled under C.R.C.P. 8. It is equally clear to me that Hall has pleaded a viable intentional interference with contract claim. Indeed, as pleaded, the complaint sets forth what I view to be a prototypical intentional interference case.
65 In holding otherwise, the majority has effectively granted Warne summary judgment before she was even required to respond to the complaint and before giving Hall a fair opportunity to conduct discovery to establish facts that are in Warne's exclusive possession and control. In doing so, I believe that the majority has denied Hall the fair day in court to which he was entitled,
III, Conclusion
166 For these reasons, I respectfully dissent.
I am authorized to state that JUSTICE MARQUEZ and JUSTICE HOOD join in this dissent.