2012 COA 10

**Chanson ROQUE and Shannon Isenhour,**
**Plaintiffs–Appellants,**

v.

**ALLSTATE INSURANCE COMPANY,**
**Defendant–Appellee.**

No. 10CA2591.

Colorado Court of Appeals,
Div. III.

Jan. 19, 2012.

James J. Peters, Denver, Colorado, for Plaintiffs–Appellants.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, Englewood, Colorado, for Defendant–Appellee.

Opinion by Judge WEBB.

¶ 1 This case addresses whether, in the context of a "road rage" incident, using a car to block a second car, before the driver exits the first car and assaults persons from the second car, constitutes use of a motor vehicle for the purposes of uninsured motorist (UM) insurance coverage. We conclude that exiting the car and then engaging in intentional misconduct breaks the requisite causal chain between use of the vehicle and the injuries. Therefore, we affirm the trial court's summary judgment for defendant, Allstate Insurance Company, and against plaintiffs, Chanson Roque and Shannon Isenhour.

## I. Background

¶ 2 Plaintiffs, in Isenhour's car, and Richard Terlingen, in his car, exchanged verbal hostilities while driving next to each other. When plaintiffs turned into a McDonald's parking lot, Terlingen followed. He parked directly behind the plaintiffs' car, preventing their use of the car to leave. After all three of them exited their vehicles, Terlingen pulled a golf club from the trunk of his car and struck plaintiffs with it, causing injuries.

¶ 3 Terlingen held home, umbrella, and automobile insurance policies with American Family Mutual Insurance Company. American Family obtained a declaratory judgment in federal court that it was not required to cover Terlingen for the injuries that he had caused. The court ruled that the home-owners and umbrella policies expressly excluded coverage for injuries resulting from intentional or criminal acts, and that while the automobile policy covered Terlingen for third-party claims "due to the use of a car," plaintiffs' injuries did not result from such use. *Am. Family Mut. Ins. Co. v. Terlingen*, 2008 WL 5156425 (D.Colo. No. CIV.08–CV–01273–REB, Dec. 9, 2008) (unpublished order).

¶ 4 Because this judgment rendered Terlingen an uninsured motorist, plaintiffs sought recovery for their injuries through the UM coverage in the Allstate policy covering Isenhour's vehicle. When Allstate denied coverage, plaintiffs brought this declaratory judgment action. The trial court granted Allstate's motion for summary judgment, holding that plaintiffs' injuries did not arise from the use of an automobile.

## II. Standard of Review

¶ 5 We review de novo the trial court's summary judgment ruling. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007). Summary judgment is appropriate only where the pleadings and supporting documents reveal no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *In re Tonko*, 154 P.3d 397, 402 (Colo.2007). The nonmoving party is entitled to all favorable inferences reasonably drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Martini v. Smith*, 42 P.3d 629, 632 (Colo.2002).

## III. Analysis

¶ 6 Allstate's policy covers damages caused by the owner or operator of an uninsured vehicle "aris[ing] out of the ownership, maintenance, or use of an uninsured auto." Plaintiffs argue that their injuries arose out of Terlingen's use of his vehicle because but for the road rage incident, the altercation would not have occurred, and by parking closely behind them to prevent them driving out of the parking lot, Terlingen used his vehicle to facilitate the assault. They do not assert that this clause is ambiguous.

### A. Issue Preclusion

¶ 7 Preliminarily, we reject Allstate's contention that because the declaratory judgment in federal court determined that plaintiffs' injuries had not resulted from Terlingen's use of his vehicle, issue preclusion bars plaintiffs' claim. Although the trial court did not rule on this issue, Allstate raised it in the motion for summary judgment. We can affirm for any reason supported by the record, even reasons not decided by the trial court. *Newflower Market, Inc. v. Cook,* 229 P.3d 1058, 1061 (Colo.App. 2010).

¶ 8 A decision precludes relitigation of a factual or legal issue in a subsequent proceeding when:

(1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom [preclusion] was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Stanton v. Schultz,* 222 P.3d 303, 307 (Colo. 2010).

¶ 9 Here, the issue litigated in federal court was not identical to the issue before us. This case involves a policy providing first-party coverage mandated by Colorado's UM statute, section 10–4–609, C.R.S.2011. The federal court addressed a different insurer's policy providing third-party coverage. Such coverage does not fall under the UM statute.

### B. Use of an Automobile

¶ 10 The supreme court most recently defined "use of an automobile" for purposes of UM coverage in *State Farm Mutual Automobile Insurance Co. v. Kastner,* 77 P.3d 1256 (Colo.2003). There, an assailant kidnapped the insured, drove her in her own car to a remote location, and sexually assaulted her in the vehicle. *Id.* at 1258. Her automobile insurer sought a declaratory judgment that its policy did not provide coverage for the injuries arising from the assault. *Id.* In ruling against the insured, the *Kastner* court articulated a two-prong test for determining when injuries arise from the use of a vehicle, applicable to both Personal Injury Protection and UM claims.

¶ 11 The first prong involves the use of the vehicle:

As a threshold matter ... the claimant must show that at the time of the "accident," the vehicle was being "used" in a manner contemplated by the policy in question .... and inherent in the nature of the automobile [ ] as such.

.... [U]nless articulated otherwise in the policy, the only use of a non-commercial passenger vehicle that is foreseeable or conceivable at the time of contracting for insurance is use as a means of transportation.

*Id.* at 1261, 1262 (internal quotation marks, footnotes, and citations omitted).

¶ 12 The second prong, involving two parts, addresses the causal connection between the use and the injuries:

[T]he claimant must first show that except for the use of the vehicle, the accident or incident in question would never have taken place....

In addition, to complete and satisfy the causal analysis, the claimant must show that the "use" of the vehicle and the injury are directly related or inextricably linked so that no independent significant act or non-use of the vehicle interrupted the "but for" causal chain between the covered use of the vehicle and the injury.

*Id.* at 1264. This but-for and "independent significant act" test superseded a variety of tests for causation in earlier cases.[1]

---

1. *See, e.g., Azar v. Employers Cas. Co.,* 178 Colo. 58, 60–61, 495 P.2d 554, 555 (1972) (" '[A]rising out of the use' ... has generally been construed broadly and comprehensively, and to mean 'originate from,' 'grow out of,' or 'flow from' .... [and] there must be a causal relation or connec-

tion between the injury and the use of the vehicle."); *Kohl v. Union Ins. Co.,* 731 P.2d 134, 135 (Colo.1986) (following *Azar* ); *Cung La v. State Farm Auto. Ins. Co.,* 830 P.2d 1007, 1010 (Colo. 1992) (applying *Kohl* to a drive-by shooting on the highway).

¶ 13 The *Kastner* court concluded that the assailant's uses of the vehicle—reclining the passenger seat so the insured could not signal for help, driving the car to an isolated area to commit the sexual assault, and restraining the insured with the car's automatic seat belts—were all "foreign to the inherent purpose of the motor vehicle as a mode of transportation." *Id.* at 1265 (internal quotation marks and citations omitted). Although the car "served as the site" of the sexual assault and the assailant used the car's furnishings to facilitate the assault inside the car, "[t]hese uses [were] not foreseeably identifiable with the inherent purpose of a motor vehicle." *Id.* at 1266.

¶ 14 The court also concluded that no causal connection existed between any covered use of the car and the insured's injuries. It explained that the reclining seat and seat belts "merely assist[ed] the assailant in a way that incidental objects or furnishings inside a house could have helped him without actually causing the assault." *Id.* Nor did using the car to transport the insured to a remote location create the requisite causal connection because "using the car to drive the victim to a remote location no more connects the car to the assault than if the assailant had used the car as the mere situs of the assault without moving it." *Id.*

¶ 15 Similarly here, Terlingen's use of his car does not satisfy either prong of the *Kastner* test. First, because Terlingen's car was a noncommercial passenger vehicle, the car's only identifiable foreseeable use was for transportation. While Terlingen used the car for transportation during the verbal exchange on the highway and to follow plaintiffs into the McDonald's lot, parking his car behind plaintiffs' car to block their driving away was not using the car for transportation and not another use contemplated by the policy.[2]

¶ 16 Second, Terlingen's assault with his golf club constituted an independent significant act or non-use of the vehicle interrupting the "but for" causal chain between any covered use of the vehicle and the injury. Under *Kastner*, using the car to drive to the site of the assault does not create the requisite causal connection. The golf club was more attenuated from the vehicle than the reclining seat and seatbelts characterized as non-uses of the vehicle in *Kastner*.

¶ 17 Plaintiffs' reliance on *Cole v. United Services Automobile Association (USAA)*, 68 P.3d 513 (Colo.App.2002), is misplaced. There, a division of this court held that uninsured motorist coverage was available to an insured who had been assaulted in a road rage incident. The plaintiff was riding in a car when a second, uninsured car began to tailgate the plaintiff's car. *Id.* at 514. The driver of the plaintiff's car slowed down for the second car to pass, which it did, but then it "pulled back in front of [the plaintiff]'s vehicle and stopped suddenly." *Id.* When the driver of the plaintiff's car stopped to avoid a collision, the uninsured vehicle backed into the front of the plaintiff's car. *Id.* During the ensuing fight between the drivers, a passenger left the uninsured vehicle, opened the passenger door to the plaintiff's car, and assaulted the plaintiff. *Id.*

¶ 18 The *Cole* division rejected the insurer's argument that the plaintiff's injuries "did not arise out of the use and operation of the uninsured motor vehicle, but rather resulted from a physical attack with a wine bottle by an assailant who had severed his connection with the parked uninsured vehicle." *Id.* at 515. Defining "use" broadly, the court applied a "but for" causation test, explaining "[t]he claimant need not establish that the vehicle was the sole cause of the accident; it is sufficient that the injury 'originated in,' 'grew out of,' or 'flowed from' use of the vehicle." *Id.* (quoting *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1011 (Colo.1992)). Under this test, the division held that because "the uninsured vehicle impeded the progress of plaintiff's vehicle and enabled the passenger of the uninsured vehicle to get out and assault plaintiff," the plaintiff's injuries arose from use of the vehicle. The court also noted, "[t]he fact that the assailant left the uninsured vehicle before assaulting plaintiff does not sever the causal

---

2. The nature of Terlingen's car distinguishes *State Farm Mut. Auto. Ins. Co. v. McMillan*, 925 P.2d 785 (Colo.1996), in which the commercial vehicle involved could be used to redirect traffic.

connection between plaintiff's injuries and the uninsured vehicle." *Id.*

¶ 19 Although *Kastner* made no reference to *Cole*, we reject plaintiffs' contention that "*Cole* is not contrary to the analytical holding in *Kastner* [and i]n fact, *Cole* applies the same analysis of *Kastner.*" *Cole* expressly held that the uninsured motorist policy covered the insured's injuries because those injuries "originated in, grew out of, or flowed from" the use of the uninsured vehicle. *Kastner* superseded this test by adding the requirement that no independent significant act or non-use of the vehicle interrupt the causal connection.[3]

¶ 20 Further, we are not bound to follow decisions of other divisions of this court. *Clubhouse at Fairway Pines, L.L.C. v. Fairway Pines Estates Owners Ass'n,* 214 P.3d 451, 454 (Colo.App.2008). Because *Cole* also runs counter to the weight of out-of-state authority on this issue, we decline to follow it.

¶ 21 Most states to have addressed the issue agree that "the act of leaving the vehicle and inflicting a battery is an event of independent significance that is too remote, incidental, or tenuous to support a causal connection with the use of the vehicle despite the fact that the vehicle was used to stop and trap another vehicle." *Laycock v. Am. Fam. Mut. Ins. Co.,* 289 Ill.App.3d 264, 224 Ill.Dec. 821, 682 N.E.2d 382, 385 (1997); *see, e.g., Allstate Ins. Co. v. Skelton,* 675 So.2d 377, 380 (Ala.1996) (no coverage where one driver used his car to force another driver into a vulnerable position but then exited his car to carry out assault); *United Servs. Auto. Ass'n v. Ledger,* 189 Cal.App.3d 779, 234 Cal.Rptr. 570, 570–71 (1987) (same, even under standard that "arising out of the use . . . has broad and comprehensive application, and affords coverage for injuries bearing almost *any* causal relation with the vehicle" (emphasis in original)); *Hamidian v. State Farm Fire & Cas. Co.,* 251 Kan. 254, 833 P.2d 1007, 1013 (1992) (same); *Cannon v. Maine Bonding & Cas. Co.,* 138 N.H. 365, 639 A.2d 270, 271 (1994) (same, expressly distinguishing cases where assailant "brought [the] car to a stop and *left* it unattended" from those in which "the assailant shot the victim *while driving or riding in a moving vehicle*" (emphases in original)); *Mileski v. Ortman,* 16 Ohio App.3d 217, 475 N.E.2d 166, 167 (1984) (same).

¶ 22 Such states expressly reject the blocking analysis in *Cole. See, e.g., Commercial Union Ins. Co. of New York v. Hall,* 246 F.Supp. 64, 65 (E.D.S.C.1965) (applying South Carolina law) (using one's car to block another's escape before leaving car to commit assault "is not the type of 'use' reasonably contemplated by the insurer and the insured"); *Ulrich v. United Servs. Auto. Ass'n,* 839 P.2d 942, 947, 949 (Wyo.1992) (where assailant blocked victim's vehicle with his own before exiting and shooting victim in the face, "injuries did not occur as a natural consequence of the use of [the assailant]'s uninsured motor vehicle, but rather occurred as a natural consequence of [the assailant]'s intentional use of a loaded firearm"). *See also California Auto. Ins. Co. v. Hogan,* 112 Cal.App.4th 1292, 5 Cal.Rptr.3d 761, 769 (2003) (finding reasoning in *Cole* "unpersuasive" because "the use of the uninsured vehicle was merely incidental to, and not a substantial factor in, causing the injuries to the insured").

¶ 23 Although the distinction between an assault perpetrated from within a vehicle, such as the drive-by shooting in *Cung La,* and one committed after opening the vehicle door and taking one step out seems slight, "[t]he scope of coverage afforded by the type of insuring clause in question must end at some point." *Ulrich,* 839 P.2d at 950 (quoting *Worthington v. State,* 598 P.2d 796, 809 (Wyo.1979)). Colorado's uninsured motorist statute is intended only to "compensate[ ] a person injured by an uninsured motorist to the same extent as one injured by a motorist who is insured in compliance with the law," not to "require full indemnification of losses suffered at the hands of uninsured motorists

---

**3.** Justice Bender's dissent shows that the *Kastner* majority impliedly rejected the *Cole* test. He wrote, "[T]he majority's causation prong misreads our prior holdings. According to my reading of the cases, the test should be whether an injury originates in, grows out of, or flows from the use of a car." *Kastner,* 77 P.3d at 1267 (Bender, J., dissenting).

under all circumstances." *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 61 (Colo.1990).[4]

¶ 24 Accordingly, we conclude that because plaintiffs' injuries did not result from use of a vehicle, they were not entitled to UM coverage.

### C. Uninsured Motorist Statute

¶ 25 Finally, plaintiffs contend the Allstate policy is unenforceable to the degree it fails to conform to Colorado's Uninsured Motorist Statute. We perceive no conflict.

¶ 26 The statute requires automobile liability policies that insure against loss "arising out of the ownership, maintenance, or use of a motor vehicle" to provide supplemental insurance covering such injuries when caused by the operator of an uninsured motor vehicle. § 10–4–609(1)(a), C.R.S.2011. Neither the statute nor the Allstate policy defines "use," and plaintiffs do not offer any reason why these provisions are in conflict. Plaintiffs' disagreement with appellate interpretations of "use of an automobile" does not create a conflict between the statute and the policy, as both are governed by the same case law.

¶ 27 Plaintiffs' reliance on *McMillan*, 925 P.2d at 792, is misplaced. *McMillan* held the policy definition of "accident" as encompassing only negligent acts, excluding intentional acts, conflicted with the statute, and as such was unenforceable. It did not address use of an automobile.

¶ 28 Accordingly, we affirm the summary judgment.

Judge ROY and Judge FOX concur.

---

4. In the negligence context, finding liability depends "in part on the policy consideration of whether a defendant's responsibility should extend to the results in question," and on "our more or less inadequately expressed ideas of what justice demands, or what is administratively possible and convenient." *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 612 (Colo.App. 1998). *See also Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo.1987) (a court's decision regarding liability is " 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection' " (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 53, at 358 (5th ed. 1984))).