The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 6, 2018

## 2018COA133

**No.17CA1200,** *Bailey v. State Farm Automobile Insurance Company* **— Insurance — Motor Vehicles — Uninsured/Underinsured**

A division of the court of appeals considers whether an underinsured motorist (UIM) policy is triggered under Colorado's UIM statute, section 10-4-609, C.R.S. 2017, if the negligent driver's insurance company agrees to pay the full extent of a jury's verdict. The division concludes that (1) the legislature did not intend to allow a plaintiff to recover UIM benefits in excess of the damages awarded by a jury and (2) the language of the statute does not prevent an insurer from effectively increasing a driver's liability coverage by offering to pay any damages awarded at trial.

Because the trial court properly determined that the UIM benefits were not triggered, the division affirms the trial court's judgment.

Court of Appeals No. 17CA1200
Boulder County District Court No. 15CV31239
Honorable Judith L. Labuda, Judge

Bruce Bailey,

Plaintiff-Appellant,

v.

State Farm Mutual Automobile Insurance Company,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division I
Opinion by JUSTICE MARTINEZ*
Taubman and Welling, JJ., concur

Announced September 6, 2018

Fuicelli & Lee P.C., R. Keith Fuicelli, Amanda C. Francis, Denver, Colorado, for Plaintiff-Appellant

Frank Patterson & Associates, P.C., Franklin D. Patterson, Karl A. Chambers, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1      Plaintiff, Bruce Bailey, appeals the trial court's order granting a motion for entry of judgment in favor of defendant, State Farm Mutual Automobile Insurance Company (State Farm).

¶ 2      In this appeal, we are asked to determine whether an underinsured motorist (UIM) policy is triggered under Colorado's UIM statute, section 10-4-609, C.R.S. 2017,[1] if the negligent driver's insurance company agrees to pay the full extent of a jury's verdict. We answer that question "no" because (1) the legislature did not intend to allow a plaintiff to recover UIM benefits in excess of the damages awarded by a jury and (2) the language of the statute does not prevent an insurer from effectively increasing a driver's liability coverage by offering to pay any damages awarded at trial.

¶ 3      We therefore affirm the trial court's judgment.

---

[1] Section 10-4-609, C.R.S. 2017, is titled "Insurance protection against uninsured motorists — applicability." However, the statute concerns both uninsured and underinsured motorist coverage. We will refer to the statute as the underinsured motorist statute and to underinsured motorist benefits because the other driver in this case was not an uninsured motorist.

## I.    Background

¶ 4    This case arises from a car wreck involving the plaintiff and another driver.  Plaintiff sued the other driver for negligence and State Farm for UIM benefits.  The other driver is not a party to this appeal.

¶ 5    At the time of the accident, the other driver's insurance company covered him for $100,000 in damages.  Plaintiff's policy covered him up to $100,000 for damages caused by underinsured motorists.  Coincidentally, State Farm issued both policies involved in this case.[2]

¶ 6    Six days before trial was to commence, the other driver disclosed a letter from his insurance company.  The letter stated that "[s]hould the case actually be tried, provided you comply with the conditions indicated above, you are fully protected from any compensatory damage award which may be awarded at trial,

---

[2] When we refer to State Farm throughout the opinion, we are referring to plaintiff's insurer rather than the other driver's insurer. Although State Farm insured both drivers, and attorneys provided by State Farm tried the case on behalf of the other driver, the trial court treated them as "distinct defendants."

regardless of amount." None of the parties requested leave to amend or supplement their pleadings based on the new disclosure.

¶ 7     At trial, State Farm presented evidence that plaintiff had not cooperated with claims adjusters and had committed fraud by presenting false information to them concerning his income. Therefore, State Farm asserted plaintiff's actions had voided the insurance contract, and plaintiff was not entitled to UIM benefits.

¶ 8     The jury found in favor of plaintiff and awarded him damages in the amount of $300,000. The jury also rejected State Farm's affirmative defenses of fraud and failure to cooperate.

¶ 9     Following trial, State Farm moved for entry of judgment, asserting that the insurance company's letter effectively provided unlimited liability insurance coverage for the other driver. Therefore, the other driver's insurance would cover the total amount of damages, and according to State Farm, because there was no difference between the coverage limit and the amount of damages, plaintiff was not entitled to UIM benefits. The other driver did not object to State Farm's motion.

¶ 10     The trial court granted the motion in a thorough, well-reasoned opinion.  The other driver's insurance company paid the entire judgment.

## II.     State Farm's Motion for Entry of Judgment

¶ 11     Plaintiff contends that the trial court erred in granting State Farm's motion for entry of judgment.  We disagree.

### A.     Standard of Review and General Legal Principles

¶ 12     This case requires us to interpret the UIM statute, section 10-4-609.  Our review of a statute is de novo.  *Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 5.

¶ 13     When we interpret statutes, we must ascertain and give effect to the legislature's intent.  *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 16.  "We construe the entire statutory scheme to give consistent, harmonious, and sensible effect to all parts," and "[w]e give effect to words and phrases according to their plain and ordinary meaning."  *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011).  If a statute's language is clear, we apply it as the legislature wrote it.  *Id.*

## B.    Section 10-4-609

¶ 14    Section 10-4-609(1)(c) states, in pertinent part, that
underinsured coverage

> shall be in addition to any legal liability
> coverage and shall cover the difference, if any,
> between the amount of the limits of any legal
> liability coverage and the amount of the
> damages sustained, excluding exemplary
> damages, up to the maximum amount of the
> coverage obtained pursuant to this section.

¶ 15    The legislature added the above language to the statute in
2007, and it took effect January 1, 2008.  Ch. 413, secs. 1, 4,
§ 10-4-609, 2007 Colo. Sess. Laws 1921, 1923.  Before the 2008
amendments, the statute included the following language:

> The maximum liability of the insurer under the
> uninsured motorist coverage provided shall be
> the lesser of:
>
> (a) The difference between the limit of
> uninsured motorist coverage and the amount
> paid to the insured by or for any person or
> organization who may be held legally liable for
> the bodily injury; or
>
> (b) The amount of damages sustained, but not
> recovered.

§ 10-4-609(5), C.R.S. 2007.

¶ 16    In *Jordan v. Safeco Insurance Company of America, Inc.*, 2013
COA 47, ¶ 30, a division of this court interpreted how these

5

amendments changed the ways that a plaintiff could recover UIM benefits. The negligent driver in *Jordan* carried a liability policy that covered injuries up to $100,000 per person. *Id.* at ¶ 3. The two plaintiffs settled their claims against the defendant for $60,000 and $38,500, respectively. *Id.* Then, the plaintiffs sought UIM benefits from their own insurer. *Id.* at ¶ 4. The insurer denied the claim. *Id.* The plaintiffs stipulated that their damages did not exceed $100,000. *Id.* at ¶ 5.

¶ 17    The division concluded that the plain language of section 10-4-609(1)(c) dictated that "[t]he insurer's obligation to pay benefits is now triggered by exhaustion of the tortfeasor's 'limits of . . . legal liability coverage,' not necessarily any payment from or judgment against the tortfeasor." *Id.* at ¶ 29 (quoting § 10-4-609(1)(c)) (citing *Vignola v. Gilman*, No. 2:10-CV-02099-PMP, 2013 WL 495504, at *13 (D. Nev. 2013)). The division determined that because the plaintiffs' damages did not exceed the $100,000 limit, as stipulated by the parties, the UIM policy was not triggered. Under the former statute, however, the plaintiffs could have recovered "the gap" between the amount that the plaintiffs settled

for and the other driver's liability coverage limit. *See* § 10-4-609(5)(a), C.R.S. 2007; *Jordan*, ¶ 33.

¶ 18 The *Jordan* division determined that the legislature "changed Colorado's UIM statutory scheme from a 'reduction' approach . . . to an 'excess' approach." *Jordan*, ¶ 30. Under a reduction approach, the UIM coverage is "reduced by any payment received or judgment against the tortfeasor." *Id.* In contrast, the excess approach allows a plaintiff to collect UIM benefits "for damages exceeding the tortfeasor's liability policy limit," up to the insured's UIM policy limit. *Id.*

¶ 19 Another division of this court returned to these questions in *Tubbs v. Farmers Insurance Exchange*, 2015 COA 70. In that case, the negligent driver's insurer covered him for $100,000, but he settled with the plaintiff for $30,000. *Id.* at ¶¶ 2-3. The plaintiff sought UIM benefits from his insurer, which covered him up to $500,000. *Id.* The division rejected the insurer's argument that the plaintiff was required to exhaust the other driver's legal liability limits before he could pursue UIM benefits. *Id.* at ¶ 11. The division distinguished *Jordan*, noting that the plaintiff in *Tubbs*

claimed damages exceeding the negligent driver's liability coverage. *Id.* at ¶ 15.

## C.    Analysis

¶ 20     Plaintiff first contends that the trial court abused its discretion by allowing State Farm to prevail on an affirmative defense that it did not present until after trial.

¶ 21     If this argument is not successful, plaintiff's next contention is that the trial court erred in interpreting the provisions of section 10-4-609 because (1) the other driver's offer to pay the entire judgment does not constitute "legal liability coverage," § 10-4-609(1)(c); and (2) even if it does, the other driver's status as an "underinsured motorist" is determined "at the time of the accident," § 10-4-609(4).

¶ 22     We disagree with each of plaintiff's contentions and conclude that the trial court did not err in granting State Farm's motion for entry of judgment.

### 1.    State Farm Did Not Present a New Affirmative Defense

¶ 23     Plaintiff contends that the trial court should never have considered the merits of State Farm's motion for entry of judgment because the motion raised an affirmative defense that State Farm

waived by not presenting it before trial.  *See Dinosaur Park Invs., L.L.C. v. Tello*, 192 P.3d 513, 517 (Colo. App. 2008) (noting that a party must assert an affirmative defense in a responsive pleading or the defense is waived).  We disagree.

¶ 24    Because we conclude that State Farm's motion did not raise an affirmative defense, we reject plaintiff's argument.

¶ 25    An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true."  Black's Law Dictionary 509 (10th ed. 2014); *accord Soicher v. State Farm Auto. Ins. Co.*, 2015 COA 46, ¶ 18.  C.R.C.P. 8(c) provides a nonexclusive list of recognized affirmative defenses in Colorado, including "accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, [and] waiver."

¶ 26    Plaintiff does not contend that State Farm raised one or more of the listed affirmative defenses in C.R.C.P. 8(c).  Moreover, plaintiff does not argue that State Farm raised a defense that is

9

"conceptually or remedially similar to" one of the defenses listed in C.R.C.P. 8(c). *Dinosaur Park Invs.*, 192 P.3d at 516.

¶ 27     It is true that C.R.C.P. 8(c) recognizes that some unlisted affirmative defenses may also exist. But, an affirmative defense must be in the nature of confession and avoidance. *See id.*; *see also People v. Low*, 732 P.2d 622, 629 (Colo. 1987) (noting that "insanity" is an affirmative defense because it "admits the commission of the offense but avoids . . . criminal responsibility"); *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 600 (Colo. App. 2007) (explaining that advice of counsel is an affirmative defense to malicious prosecution because it "basically admits the doing of the act . . . but seeks to justify, excuse, or mitigate it" (quoting *People v. Huckleberry*, 768 P.2d 1235, 1238 (Colo. 1989))). Here, State Farm did not contend that it owed UIM benefits but could avoid its obligation to pay them for some other reason. Rather, State Farm's motion asserted that it did not owe benefits at all.

¶ 28     Therefore, State Farm's motion merely asked that the trial court enter a judgment under C.R.C.P. 58 that recognized that State Farm did not owe plaintiff UIM benefits. To do so, the trial court needed to determine whether the UIM benefits were triggered,

*see* § 10-4-609(1)(c); *Jordan*, ¶ 29, and what part of the judgment, if any, State Farm was required to satisfy. The motion was therefore properly made, and the trial court did not err by entertaining it.

¶ 29   Because the trial court properly entertained the motion, we next address the trial court's determination that State Farm had no obligation to provide UIM benefits to plaintiff.

### 2.   Section 10-4-609 Does Not Allow a Party to Recover Underinsured Motorist Benefits in Excess of Actual Damages

¶ 30   Plaintiff contends that, under the plain language of section 10-4-609, State Farm is required to provide him with the full amount of UIM benefits. Although plaintiff has already recovered the full amount of the jury's verdict from the other driver's insurer, $300,000, plaintiff nonetheless contends that he should be allowed to recover an additional $100,000. We disagree for the following reasons.

¶ 31   First, the statute's plain language suggests that the legislature did not intend to allow a plaintiff to recover UIM benefits in excess of the total amount of actual damages. *See* § 10-4-609(1)(c); *Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 23 (noting that the statute's purpose is to allow a plaintiff to recover from an uninsured driver to

the same extent as a fully insured driver); *see also Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 517 (Alaska 1998) (noting that the purpose of the excess approach for UIM coverage is to "maximize the potential for full compensation . . . to the extent necessary to cover all actual damages"). The statute provides that UIM benefits are intended to cover "the difference" between the negligent driver's liability limits and the damages. § 10-4-609(1)(c). And, because UIM benefits are not triggered until the damages exceed the negligent driver's liability coverage limits, *see Jordan*, ¶ 33, the most a plaintiff could recover, taking together the other driver's coverage and the plaintiff's own UIM benefits, is the total amount of damages. If we adopted plaintiff's reading of the statute, it would create a windfall for a plaintiff, allowing him or her to recover UIM benefits in excess of his or her damages. We conclude that the legislature could not have intended that result. *See Am. Family Mut. Ins. Co. v. Barriga*, 2018 CO 42, ¶ 8 (noting that we avoid a statutory interpretation that would lead to an illogical or absurd result).

¶ 32 Second, nothing in the plain language of section 10-4-609 prevents an insurer from effectively raising an insured's "legal

12

liability coverage" by promising to "fully protect[] [an insured] from any compensatory damage award which may be awarded at trial, regardless of amount," as the other driver's insurer did here. *See Denver Post Corp.*, 255 P.3d at 1089.

¶ 33 Third, plaintiff is not entitled to UIM benefits because there is no difference between the amount of his damages and the legal liability coverage. § 10-4-609(1)(c). Here, we have concluded that the insurer's offer to fully protect the other driver from a judgment, "regardless of amount," effectively raised the other driver's legal liability coverage to the amount of the jury's verdict, or $300,000. Because the amount of damages and the amount of coverage are the same, the UIM benefits were not triggered. *See Jordan*, ¶ 29.

¶ 34 Fourth, we disagree with plaintiff's contention that the letter from the other driver's insurer did not constitute "legal liability coverage." Plaintiff contends as follows:

- Section 10-4-609(1)(a) cross-references section 42-7-103, C.R.S. 2017, which is part of the "Motor Vehicle Financial Responsibility Act."

- The latter statute notes that a "complying policy" is an insurance policy that complies with the requirements in "part 6 of article 4 of title 10, C.R.S." § 42-7-103(6.5)(b).

- Section 10-4-601(2), C.R.S. 2017, notes that a "complying policy" "is subject to the terms and conditions required by this part 6, and is certified by the insurer and the insurer has filed a certification with the commissioner that such policy, contract, or endorsement conforms to Colorado law and any rules promulgated by the commissioner."

Because the letter from the other driver's insurer does not meet the requirements of a "complying policy" as noted above, plaintiff contends that the letter is not "legal liability coverage."

¶ 35    We reject plaintiff's interpretation of the statute because he uses a cross-reference to a specific subsection of section 42-7-103 in an attempt to import into section 10-4-609 other provisions that are not applicable.  *See Arrington v. Arrington*, 618 P.2d 744, 745 (Colo. App. 1980) ("When a statute adopts precise provisions of another statute by specific reference, the adoption is considered to refer to the specific provisions contained in that other

14

statute . . . ."). Section 10-4-609(1)(a) refers specifically to section 42-7-103(2), which is the definition for an "[a]utomobile liability policy" and provides a minimum amount that insurers must offer under a policy. The cross-reference to section 42-7-103(2) is intended to apply the same monetary limitations to a UIM policy. And, section 42-7-103(2) does not mention "complying policy" or cross-reference section 42-7-103(6.5)(b), as plaintiff suggests. Furthermore, section 42-7-103(6.5)(b) notes that the definition for "complying policy" is "[f]or purposes of . . . subsection (6.5)" only. We therefore see nothing in section 10-4-609 requiring liability coverage extended before trial, in addition to that minimally required by section 10-4-609(1)(a), to be offered in a "complying policy."

¶ 36     Fifth, we are also not persuaded by plaintiff's contention that the determination of whether a driver is underinsured is made "at the time of the accident." Plaintiff relies on the language of section 10-4-609(4), which defines an "underinsured motor vehicle" as "a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident." Based on this language, plaintiff argues that, even if an

15

insurer increases an insured's liability coverage limit after an accident, the calculation of the amount of UIM benefits a plaintiff is entitled to receive is determined by the amount of legal liability coverage the negligent driver had at the time of the accident. We see nothing in the statute that would lead to this result, and we decline to write words or phrases into a statute that do not appear on its face. *See Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1204 (Colo. App. 2010) ("[W]e will not interpret a statute to mean that which it does not express.").

## III. Conclusion

¶ 37    The judgment is affirmed.

JUDGE TAUBMAN and JUDGE WELLING concur.

16