25CA0167 Brauweiler v National Jewish 12-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0167
City and County of Denver District Court No. 23CV31536
Honorable Andrew J. Luxen, Judge

---

Dr. Anne Brauweiler,

Plaintiff-Appellant,

v.

National Jewish Health,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre, J., concurs
Yun, J., specially concurs

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 18, 2025

---

Miller & Law, P.C., David J. Meretta, Littleton, Colorado, for Plaintiff-Appellant

Littler Mendelson, P.C., Grace L. McGuire, Denver, Colorado, for Defendant-Appellee

¶ 1 Plaintiff, Dr. Anne Brauweiler, appeals the district court's grant of summary judgment to defendant, National Jewish Health (NJH). We affirm.

## I. Background

¶ 2 NJH hired Brauweiler to work as a researcher. In November 2021, two months after she started, NJH placed her on unpaid suspension. Brauweiler was ultimately fired several months later in February 2022.

¶ 3 Brauweiler then filed this action against NJH and her supervisor, but the only claims at issue in this appeal are those against NJH. Brauweiler alleged that NJH breached her employment contract by firing her and that NJH violated various provisions of the Colorado Wage Claim Act, § 8-4-101 to -127, C.R.S. 2025.

¶ 4 NJH moved for summary judgment on these claims and the district court granted the motion. The court held that NJH did not breach the employment contract because Brauweiler was an at-will employee whom NJH could fire at any time without cause. The court further held that the Wage Claim Act claims failed based on the undisputed facts.

¶ 5    Brauweiler challenges these rulings on appeal.  We address each argument in turn and affirm.

## II.    Summary Judgment Standard

¶ 6    We review an order granting summary judgment de novo. *Univ. of Denv. v. Doe*, 2024 CO 27, ¶ 7.  Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  We give the party opposing summary judgment the benefit of all favorable and reasonable inferences from the facts.  *Id.* at ¶ 8.  And we resolve all doubts in favor of the party opposing summary judgment.  *Id.*

## III.    Breach of Contract

¶ 7    As relevant here, Brauweiler's breach of contract claim alleged that her contract provided for a three-year term and that NJH breached the contract by firing her before that term expired.  The district court granted summary judgment on this claim because it determined that Brauweiler's employment was at will, meaning NJH could fire her at any time.

¶ 8    Reviewing this ruling requires us to interpret the contract. Our primary goal when interpreting a contract is to ascertain and

give effect to the parties' intent. *Gagne v. Gagne*, 2014 COA 127, ¶ 51. We start with the "language of the instrument itself." *Id.* If the written instrument is "complete and free from ambiguity, we will conclude that it expresses the intentions of the parties and enforce it according to its plain language." *Id.* Absent ambiguity in the written instrument itself, "we will not look beyond the four corners of the agreement to determine the meaning intended by the parties." *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376-77 (Colo. 2000).[1]

¶ 9      In conducting this review, we are also bound by the party presentation principle. In both criminal and civil cases, regardless of what arguments an appellant might have advanced below and therefore preserved for appellate review, we will address only those arguments the appellant properly raises on appeal. *See Compos v. People*, 2021 CO 19, ¶ 35 (citing *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)). The parties, not us, "are responsible for

---

[1] The principle that we will not look beyond the four corners of a complete and unambiguous agreement is sometimes referred to as the parol evidence rule. But it is not a rule of evidence. Instead, it is a substantive principle of contract interpretation, much like the canons of statutory interpretation. *See Glover v. Innis*, 252 P.3d 1204, 1208 (Colo. App. 2011).

advancing the facts and arguments entitling them to relief." *Greenlaw*, 554 U.S. at 244 (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment)). Consequently, we do not address arguments presented without citation to authority or substantial argument. *See Vickery v. Evelyn V. Trumble Living Tr.*, 277 P.3d 864, 870 (Colo. App. 2011). And we do not consider arguments beyond those properly presented by the appellant. *See Compos*, ¶ 35.

¶ 10 Neither party disputes that there is a single written instrument that both Brauweiler and NJH signed: the offer letter. It contained many specific terms of her employment, including her title, compensation, job responsibilities, supervisors, and leave, among other things. It also said, "This contract is automatically renewed on July 1 of each year unless it is terminated in writing."

¶ 11 The district court determined that this written instrument unambiguously created an at-will employment relationship, thereby obviating any need to look elsewhere to ascertain the parties' intent. ("[A]s a matter of law, the [c]ourt concludes that, pursuant to the terms of the [offer] [l]etter, [Brauweiler]'s employment was at-will, and [NJH] possessed discretion to terminate her employment.") We

4

agree with the district court. The unambiguous practical effect of the offer letter's language was that Brauweiler's term of employment was indefinite and that either she or NJH could terminate her employment in writing at any time for any or no reason. This fits the definition of at-will employment. *See Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987) (explaining that an at-will employee is one who is hired for an indefinite period of time and whose employment can be terminated by either party without cause and without notice).

¶ 12    Nevertheless, Brauweiler argues that the district court erred by failing to consider materials beyond the offer letter, including NJH's "Faculty Appointment, Promotion, and Periodic Evaluation Policy" (FAPPE) and various communications and conduct by NJH staff. Again, the offer letter was the only document that both she and NJH signed. And the offer letter neither includes nor refers to the FAPPE or any other evidence Brauweiler urges us to rely on. Under the well-established contract law principles discussed above, we might have expected Brauweiler to argue that we can look beyond the offer letter because it either does not express the full

and complete intent of the parties or because it is somehow ambiguous. But she argues neither of these points.

¶ 13 Instead of arguing that the offer letter is ambiguous in and of itself, she argues that there is ambiguity when the offer letter and the FAPPE *are considered together.* But the first step of our analysis must be assessing whether we can look beyond the four corners of the offer letter (again, the only mutually signed document in this case) to the FAPPE in the first place. Brauweiler contends we can, based on a provision in the FAPPE itself, which purports to incorporate the FAPPE into all offer letters.[2] Problematically, Brauweiler fails to explain why a document unilaterally created by an employer automatically becomes part of an employment contract only because the document says so. Nor does she cite any authority for this proposition. We therefore reject this argument as conclusory and unsupported by citation to authority. *See Taylor v. Taylor,* 2016 COA 100, ¶ 13 ("It is not the function of this [c]ourt on appeal to advocate a party's position, to develop arguments[,] or to

---

[2] The FAPPE provides that it "will be deemed to be a part of each letter of offer hereinafter entered into by NJH with any member of the faculty, unless otherwise specified in such letter of offer."

6

locate and cite supporting or opposing authority." (quoting *Topco, Inc. v. State, Dep't of Highways*, 912 P.2d 805, 812 (Mont. 1996))); *Vickery*, 277 P.3d at 870 (declining to address an argument made "in only a conclusory fashion, without citation to authority, in [the] opening appeal brief").[3]

¶ 14    Despite the analysis above, we recognize that a generous reading of Brauweiler's appellate argument might be that the district court should have gone beyond the four corners of the offer letter not *because* it was ambiguous, but *to determine whether* it was ambiguous in the first instance. *See Pepcol Mfg. Co. v. Denv. Union Corp.*, 687 P.2d 1310, 1314 n.3 (Colo. 1984) ("In determining whether a contract is ambiguous, the court may conditionally admit extrinsic evidence on this issue."); *Magnetic Copy Servs., Inc. v. Seismic Specialists, Inc.*, 805 P.2d 1161, 1164 (Colo. App. 1990)

---

[3] We are also aware of a line of cases addressing the circumstances under which an employer's unilaterally created policy might become enforceable to alter an at-will employment relationship. *See, e.g., Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711-12 (Colo. 1987). But Brauweiler neither cites these cases nor urges us to apply their holdings. Consequently, these arguments are not properly before us and we do not address them. *See Compos v. People*, 2021 CO 19, ¶ 35 (citing *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008)).

("[P]arol evidence may be considered by the trial court to determine if a contract is ambiguous . . . ." (citing *Pepcol Mfg.*, 687 P.2d at 1314 n.3)). But she does not say this explicitly, nor does she cite any authority supporting this approach. We therefore come to the same conclusion as above — to the extent that Brauweiler sought to raise this argument on appeal, she has not done so in a way that triggers our review. *See Taylor*, ¶ 13; *Vickery*, 277 P.3d at 870.

¶ 15     In sum, Brauweiler fails to identify any lack of completeness or ambiguity in the offer letter — the only document both she and NJH signed. And she fails to properly present any appellate argument that would justify looking beyond the four corners of the offer letter to interpret that written agreement. She has therefore failed to persuade us that the district court erred by ignoring all evidence extrinsic to the offer letter and concluding that she was an at-will employee based on the offer letter's unambiguous language.

## IV.   Unpaid Wages

¶ 16     Brauweiler next argues that the district court erred by granting NJH summary judgment on her Wage Claim Act claim for unpaid wages allegedly earned during her unpaid suspension. She argues that she is entitled to her salary for this period of time

(1) because she performed work while suspended and (2) even if she performed no work while suspended.  We agree with NJH that Brauweiler failed to raise the first argument in her summary judgment filings below.  We therefore address only her second argument: that she was entitled to her salary under the Wage Claim Act even if she did no work while suspended.  *See White v. Progressive Mountain Ins. Co.*, 62 P.3d 1074, 1077 (Colo. App. 2002) (declining to address argument raised on appeal but not raised in response to summary judgment motion).

¶ 17     We interpret statutes de novo, seeking to give effect to the legislature's intent.  *Est. of Ross v. Pub. Serv. Co. of Colo.*, 2025 COA 31, ¶¶ 13-14 (*cert. granted* Nov. 17, 2025).  We do this by reading the statutory language in the context of the statute as a whole and the statutory scheme.  *Id.* at ¶ 15.  If the statutory language is unambiguous when read in context, we apply that unambiguous meaning.  *Id.* at ¶¶ 14-15.

¶ 18     We take Brauweiler's point that under the terms of the offer letter, she was entitled to her salary unless and until she was terminated.  But the claim at issue here seeks unpaid wages or compensation under the Wage Claim Act (it is not a breach of

9

contract claim). Specifically, Brauweiler seeks unpaid wages under section 8-4-109(1)(a), C.R.S. 2025, which addresses the payment of wages or compensation upon termination. The Wage Claim Act defines "[w]ages" or "compensation" as money "for labor or service performed by employees." § 8-4-101(14)(a)(I). The compensation Brauweiler seeks does not fit this definition because it is compensation Brauweiler performed no work for. Accordingly, Brauweiler is not entitled to wages or compensation as defined by the Wage Claim Act and this challenge to the court's summary judgment ruling fails.

## V. Retaliation

¶ 19 Brauweiler also argues that the court erred by granting NJH summary judgment on her Wage Claim Act retaliation claim. This claim alleged that NJH violated section 8-4-120(1)(a), C.R.S. 2025, which says an employer "shall not intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate or retaliate against an employee or worker who has . . . [f]iled a complaint or instituted or caused to be instituted a proceeding under this article 4 or any other law or rule related to wages."

¶ 20    As we understand it, Brauweiler argued in the district court that NJH violated this statute in three ways: (1) by marking her ineligible for rehire; (2) by sending her a letter from outside counsel asking her to direct communication about her wages to outside counsel instead of NJH; and (3) by preventing her from communicating with her former colleagues about matters unrelated to her wages.  We conclude that the district court properly rejected all of these arguments in granting summary judgment.

¶ 21    First, the undisputed facts showed that NJH marked Brauweiler as ineligible for rehire *before* she demanded any unpaid wages.  Consequently, NJH's action could not have been retaliatory — NJH could not have retaliated against something that had not happened yet.  On appeal, Brauweiler contends that "the date on which NJH marked [her] as ineligible for rehire was in dispute."  But she fails to identify any evidence establishing that dispute.  We therefore reject this argument.

¶ 22    Brauweiler's second and third retaliation theories involve a letter NJH's outside counsel sent to Brauweiler's home after she first demanded unpaid wages following her termination.  As above, the undisputed facts established that the letter did not prevent

11

Brauweiler from contacting her former colleagues at NJH about unrelated matters. The letter's subject line was "Re: Demand for Payment of Wages." In it, outside counsel wrote, "I am formally requesting that you immediately cease and desist from contacting NJH directly regarding this matter. *Please direct all further correspondence to me.* Any further attempts to contact NJH or its employees regarding this matter will be viewed as harassment." It was clear that the direction applied only to "this matter," which was Brauweiler's "Demand for Payment of Wages." This left Brauweiler free to contact her former colleagues about anything unrelated to the wage dispute.

¶ 23    Finally, Brauweiler argues that the mere fact that NJH's outside counsel made this request by sending a letter to her home constituted retaliation. In her opening brief, she states in conclusory fashion that sending the letter, in and of itself, might have dissuaded a reasonable worker from pursuing unpaid wages. She does not explain why or how. Without more, we deem this contention unsupported by substantial argument and do not address it. *See Taylor,* ¶ 13 (declining to address conclusory contentions unsupported by substantial argument).

## VI. Appellate Fees and Costs

¶ 24 NJH requests its reasonable appellate attorney fees and costs as a sanction under C.A.R. 38(b) because Brauweiler's appeal was frivolous as filed. An appeal is frivolous as filed if "there are no legitimately appealable issues because the judgment below 'was so plainly correct and the legal authority contrary to the appellant's position so clear.'" *Calvert v. Mayberry*, 2019 CO 23, ¶ 45 (quoting *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006)). Although we have disagreed with Brauweiler's arguments, we do not view the appeal as so egregious that it warrants appellate attorney fees and costs as a sanction. *See Mission Denv. Co. v. Pierson*, 674 P.2d 363, 365-66 (Colo. 1984) (explaining that C.A.R. 38 sanctions should be imposed "only in clear cases" and be "directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights.").

## VII. Disposition

¶ 25 The judgment is affirmed.

JUDGE FREYRE concurs.

JUDGE YUN specially concurs.

13

JUDGE YUN, specially concurring.

¶ 26    I concur in the result reached by the majority and with much of its analysis.  But I part ways with the majority's approach to determining whether Dr. Anne Brauweiler is an at-will employee.  The majority relied exclusively on the four corners of the offer letter and declined to consider the employment policies of the National Jewish Hospital (NJH).  *See supra,* ¶ 15.  In my view, Brauweiler's offer letter and NJH's policies should be considered together when analyzing her status as an at-will employee.

¶ 27    On September 20, 2021, NJH offered Brauweiler — a longtime employee of NJH — a faculty appointment as Instructor in Dr. Mari Nakamura's laboratory.  This offer was formalized in a letter signed by both parties, which stated: "Your appointment will be Instructor, Research, Non-Tenure Track," and "This contract is automatically renewed on July 1 of each year[4] unless it is terminated in writing."  Though the offer letter did not specify a duration of employment, it

---

[4] NJH operates on an academic calendar spanning July 1 to June 30 of the following year.  Faculty appointments are customarily aligned with this calendar, ensuring that any changes to job duties, titles, or compensation take effect at the beginning of an academic year.

14

did state that "[c]ontinued employment is contingent on your . . . adherence to institutional policies and bylaws (which may periodically change)."

¶ 28     NJH maintains a "Faculty Appointment, Promotion, and Periodic Evaluation Policy" (FAPPE), which states that it is incorporated into all faculty offer letters.  The FAPPE defines two types of faculty at NJH: "Special Category Faculty" and "Academic Faculty."  According to the policy, "Special Category Faculty members are not governed by the FAPPE Policy and their periodic reviews are not conducted by the FAPPE Committee."  An Instructor, such as Brauweiler, falls within the Special Category Faculty.  However, the FAPPE also states, "Instructors are normally appointed for renewable terms of three years; exceptions can be made at the request of their Department Chair with the approval of the Executive Vice President for Academic Affairs."  It further provides:

> The Chair of the Department within which the person will serve will initiate and recommend the appointment of a person to the rank of Instructor.  This appointment is for a term of three years and is renewable.

Finally, the FAPPE states, "In the event of a conflict between this FAPPE policy and NJH policies, NJH policies will control."

¶ 29    NJH maintains a "Faculty Recruitment and Hiring Policy" that applies to all faculty members and provides as follows:

> Employment with [NJH] is at-will. Employees have the right to end their work relationship with the company, with or without advance notice for any reason. [NJH] has the same right. The language used in this policy and any verbal statements made by management are not intended to constitute a contract of employment, either express or implied, nor are they [a] guarantee of employment for a specific duration. No representative of [NJH], other than the President or Provost has the authority to enter into an agreement of employment for any specified period. All faculty offers must be documented in writing on a faculty appointment letter as discussed above, signed by the President or Provost and the faculty member. All changes to faculty appointment letters must be in writing and approved by all original signatories.

¶ 30    Additionally, NJH's "Employee Handbook" includes the following under the heading "IMPORTANT NOTICE":

> AT [NJH], NEITHER THE EMPLOYEE NOR [NJH] IS COMMITTED TO AN EMPLOYMENT RELATIONSHIP FOR A FIXED PERIOD OF TIME. EMPLOYMENT WITH [NJH] IS AT-WILL. EITHER THE EMPLOYEE OR MANAGEMENT HAS THE RIGHT TO TERMINATE THE EMPLOYMENT RELATIONSHIP AT ANY TIME,

16

FOR ANY REASON. THE LANGUAGE USED IN THIS HANDBOOK AND ANY VERBAL STATEMENTS BY MANAGEMENT ARE NOT INTENDED TO CONSTITUTE A CONTRACT OF EMPLOYMENT, EITHER EXPRESS OR IMPLIED, NOR IS THERE A GUARANTEE OF EMPLOYMENT FOR ANY SPECIFIC DURATION. NO REPRESENTATIVE OF [NJH], OTHER THAN THE PRESIDENT, HAS THE AUTHORITY TO ENTER INTO AN AGREEMENT OF EMPLOYMENT FOR ANY SPECIFIED PERIOD AND SUCH AGREEMENT MUST BE IN WRITING, SIGNED BY THE PRESIDENT AND THE EMPLOYEE.

¶ 31    In Colorado, an employee hired for an indefinite period is considered an "at will employee." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). Such employment may be terminated by either party at any time, without cause or notice, and termination does not give rise to a cause of action. *Id.* However, the presumption of at-will employment is not absolute and may be rebutted under certain circumstances. *Id.*

¶ 32    Although employment for an indefinite period is presumed to be "at will," Colorado courts have recognized that an employer's policies — including employee handbooks — may be enforceable as a unilateral contract, thereby altering the terms of employment. *See Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 622

17

(Colo. App. 1988); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1515 (10th Cir. 1995). If an employer distributes handbooks or policy manuals that restrict its right to discharge employees, and an employee relies on those documents in exchange for initial or continued service, the employer may become contractually bound by those policies. *Cronk,* 765 P.2d at 623; *see also Keenan,* 731 P.2d at 711; *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1348-49 (Colo. 1988).

¶ 33    However, if the policy manual or handbook contains a clear and conspicuous disclaimer, then the policy or handbook will not be construed as a contract limiting the employer's right to discharge its employees. *George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1198 (Colo. App. 1997); *see Cummings v. Arapahoe Cnty. Sheriff's Dep't,* 2018 COA 136, ¶¶ 45-61; *Jaynes v. Centura Health Corp.,* 148 P.3d 241, 248 (Colo. App. 2006).

¶ 34    The majority declines to look beyond the offer letter to determine Brauweiler's employment status, reasoning that she did not argue on appeal that the letter was ambiguous or failed to capture the parties' full and complete intent. *See supra,* ¶ 15. In my view, such an argument is unnecessary for us to consider NJH's

employment policies. What matters is whether Brauweiler was aware of or relied on those policies in accepting or continuing her employment. *Cronk*, 765 P.2d at 623; *Keenan*, 731 P.2d at 711; *Churchey*, 759 P.2d at 1348-49. And her affidavit confirms that she was aware of and relied on the FAPPE when she accepted the faculty position as Instructor. Therefore, I believe we must consider not only the offer letter but also the FAPPE and other NJH policies referenced therein.[5] *See People v. Backus*, 952 P.2d 846, 850 (Colo. App. 1998) (We "rely on [our] own interpretation of the law, even if it is clearly inconsistent with the representations or arguments of counsel in briefs or in oral argument, and even if counsel has taken an internally inconsistent position.").

---

[5] The majority also contends that Brauweiler "fails to explain why a document unilaterally created by an employer automatically becomes part of an employment contract." *Supra*, ¶ 13. However, as discussed above, Colorado law is clear that an employer's policies — including employee handbooks — may be enforceable as a unilateral contract. *See Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 622 (Colo. App. 1988); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1515 (10th Cir. 1995). And we rely on our own interpretation of the law and are not bound by the parties' arguments. *People v. Snelling*, 2022 COA 116M, ¶ 50 n.3; *see also Bar 70 Enters., Inc. v. Tosco Corp.*, 703 P.2d 1297, 1306 (Colo. 1985) (noting that courts are not bound by the parties' stipulations on questions of law or mixed questions of law and fact).

¶ 35    But consideration of those employment policies does not change Brauweiler's status as an at-will employee. First, as the district court observed, the offer letter does not specify a fixed length of employment. Nor does Brauweiler argue that the offer letter's language — stating that "[t]his contract is automatically renewed on July 1 of each year unless it is terminated in writing" — creates a definite term of employment. Therefore, either Brauweiler or NJH could terminate her employment in writing at any time, for any or no reason. This fits squarely within the definition of at-will employment. *See Keenan*, 731 P.2d at 711.

¶ 36    Still, Brauweiler argues that the offer letter and the FAPPE must be read together. She contends that the FAPPE explicitly provides it "will be deemed to be a part of each letter of offer" and supplies a definite term of three years for an Instructor. NJH, on the other hand, argues Brauweiler's position is classified as Special Category Faculty and that the FAPPE states that "Special Category Faculty members are not governed by the FAPPE Policy." NJH therefore reasons that she does not have contractual rights to enforce the FAPPE. But we do not have to resolve these conflicting arguments because the FAPPE also expressly states: "In the event of

20

a conflict between this FAPPE policy and NJH policies, NJH policies

will control."

¶ 37    It is undisputed that NJH maintains at least two at-will

employment policies: the Employee Handbook and the Faculty

Recruitment and Hiring Policy.  Brauweiler does not dispute that

she was aware of these policies.[6]  She simply claims that the parol

evidence rule precludes consideration of other policies.  But the

parol evidence rule cannot apply to other policies when the FAPPE

itself references them.  *See Tangren Fam. Tr. v. Tangren*, 2008 UT

20, ¶¶ 11-12 (explaining that the parol evidence rule does not apply

unless there is an integrated agreement, meaning that it is final and

complete); *Hatley v. Stafford*, 588 P.2d 603, 605 (Or. 1978)

(explaining that the parol evidence rule does not apply when the

writing is not complete and contains only part of the agreement).

These other policies specify that, absent a written agreement to the

contrary signed by the President or Provost of NJH,[7] all

---

[6] During her deposition, Brauweiler testified that she was aware of
and had access to the Employee Handbook, and that she signed an
acknowledgment that she received a copy of the handbook in 2020.
[7] Brauweiler also contends that under the Faculty Recruitment and
Hiring Policy, she entered into a written agreement, signed by the

employees — including faculty — are employed on an at-will basis, and not for a specified term.  Because these policies supersede any contrary provisions in the FAPPE, Brauweiler was an at-will employee.

¶ 38    Accordingly, I would affirm the district court's order granting summary judgment in favor of NJH, albeit on grounds different than the majority and the district court below.  *Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 7 ("We can affirm [summary judgment] for any reason supported by the record, even reasons not decided by the trial court.").

---

NJH Provost, specifying a duration of employment.  However, the offer letter — the only document signed by both parties — does not provide a length of employment.